UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 RASMIEH YOUSEF ODEH,
    a/k/a Rasmieh J. Odeh,
    a/k/a Rasmieh Joseph Steve,
    a/k/a Rasmieh Youssuf Odeh,
    a/k/a Rasmieh Yusef Odeh

    Defendant.
_____/

Case:2:13-cr-20772
Judge: Borman, Paul D.
MJ: Grand, David R.
Filed: 10-17-2013 At 04:33 PM
INDI USA V. SEALED MATTER (DA)

VIOLATION:   18 U.S.C. § 1425(a)

## **INDICTMENT**

THE GRAND JURY CHARGES:

### **General Allegations**

1.    The Popular Front for the Liberation of Palestine is known by the acronym PFLP. The PFLP is a Marxist-Leninist group founded in 1967 by George Habash, in the wake of the Six Day War of 1967. The Six Day War was fought by Israel and the neighboring states of Egypt,

Jordan and Syria. The PFLP is one of the original members of the Palestine Liberation Organization (PLO). Throughout most of its existence, the PFLP combined Marxist ideology with Palestinian nationalism, and was among the first of the Palestinian organizations to use terrorism as a means to win attention to its cause. Since its inception, the PFLP has carried out a long list of terrorist attacks in the international arena, particularly hijackings against aviation targets.

2.     On January 24, 1995, President William J. Clinton designated the PFLP as a Specially Designated Terrorist pursuant to Executive Order 12947 for its grave acts of violence which were disrupting the Middle East peace process and threatening the national security, foreign policy and economy of the United States. *See* 60 Fed. Reg. 5079 (Jan. 23, 1995). The PFLP's designation was accompanied by an order blocking all of the organization's assets. *See* 60 Fed. Reg. 5084-01 (Jan. 25, 1995).

3.     Under the Anti-Terrorism and Effective Death Penalty Act, the Secretary of State is empowered to designate groups as a "foreign terrorist organization" (FTO). 8 U.S.C. § 1189(a)(1). Entities are designated as FTOs if the Secretary finds (A) the organization is a foreign organization; (B) the organization engages in terrorist activity; and (C) the terrorist activity of the organization threatens the security of United States nationals or the national security of the United States. *Id.* Effective October 8, 1997, then Secretary of State Madeleine Albright designated as a foreign terrorist organization the PFLP. *See* 62 Fed. Reg. 52650-01 (Oct. 8, 1997).

4. Individuals associated with the PFLP participated in bombing plots executed on or about February 21, 1969, and on or about February 25, 1969, in Israel. The first plot involved the simultaneous or near simultaneous detonation of multiple backpack bombs in two locations in Jerusalem on or about February 21, 1969 – one, a crowded supermarket (two bombs), and the second, the British Consulate (single bomb). One of the supermarket bombs malfunctioned and did not detonate. The other bomb detonated as planned, killing two and injuring many civilians. The bomb left in the courtyard of the British Consulate was discovered and removed to a safe place before it detonated. The second plot involved a single bomb placed at the British Consulate on or about February 25, 1969. This bomb detonated as planned, causing damage to the structure.

5. On about March 1, 1969, the Israeli government arrested RASMIEH YOUSEF ODEH, defendant herein, and four other individuals, for their participation in the bombings. On or about May 5, 1969, the Israel Defense Forces (IDF) charged them in an eleven count indictment. ODEH, who was defendant number one, was charged in five of those counts:

Count 1: Membership in an illegal organization

Count 2: Placing two bombs at the supermarket on February 21, 1969, with the intent of causing death or injury or damage to property (as an accomplice), and did in fact kill two individuals

Count 3: Membership in an organization that placed two bombs at the supermarket with the intent of causing death or injury or damage to property (this was an alternative count to Count 2)

3

      Count 4:    Placing a bomb at the British Consulate on February 21, 1969, with the intent of causing death or injury or damage to property

      Count 7:    Placing a bomb at the British Consulate on February 25, 1969, with the intent of causing death or injury or damage to property, and did in fact damage the property

6.    The prosecution of ODEH and her codefendants took place before a military court governed by military law. On or about January 22, 1970, the military court, after a trial, convicted ODEH and her four codefendants of crimes relating to the bombings. Specifically, the military court found ODEH guilty of counts one, two, four and seven (membership in an illegal organization, participating in the supermarket bombings on February 21, 1969, and planting the bombs at the British Consulate). The court acquitted ODEH of count three because it was an alternative charge to count two, which she was convicted of. The court sentenced ODEH to 10 years imprisonment on count one and to life imprisonment on counts four and seven. It is not known to the grand jury what sentence the military court imposed on count two.

7.    On or about April 5, 1970, the IDF Chief of Staff, who was empowered by law to consider appeals from the military court, affirmed ODEH's convictions.

8.    On or about June 14, 1975, ODEH attempted to escape from prison and was arrested by the Israeli government for that offense.

9. ODEH served part of her prison terms from on or about March 1, 1969 to on or about March 14, 1979.

10. On or about March 14, 1979, after serving more than 10 years in prison, the Israeli government released ODEH and transferred her to Lebanon as part of a prisoner exchange with the PFLP. Israel released 76 Palestinian prisoners in exchange for an Israeli soldier captured in Lebanon. As part of the prisoner exchange, ODEH's sentence was commuted.

11. In or about December 1994, Defendant ODEH, a citizen of Jordan, filed an Application for Immigrant Visa and Alien Registration (Department of State Form 230) with the United States government for a visa to immigrate to the United States. The Application for Immigrant Visa and Alien Registration sought information relevant to the decision whether to grant Defendant ODEH an immigrant visa. Above the signature block, the following appeared:

> I, the undersigned applicant for a United States immigrant visa, do solemnly swear (or affirm) that all statements which appear in this application, consisting of Optional Forms 230 PART I and 230 PART II combined, have been made by me, including the answers in items 1 through 41 inclusive, and that they are true and complete to the best of my knowledge and belief.

12. Question 21 of the Application for Immigrant Visa and Alien Registration stated:

> LIST BELOW ALL PLACES YOU HAVE LIVED FOR SIX MONTHS OR LONGER SINCE REACHING THE AGE OF 16. BEGIN WITH YOUR PRESENT RESIDENCE.

The application then provided columns to list "CITY OR TOWN", "PROVINCE", "COUNTRY", "OCCUPATION", and "DATES (FROM/TO)". Defendant Odeh's full response falsely stated that she had lived in Amman, Jordan, from 1948 onward, thereby intentionally omitting the details of her residence, including the ten years in which she had been imprisoned. Defendant Odeh's response was false in other ways as well, because even excluding the period of time she was imprisoned, she had not lived in Amman, Jordan, from 1948 continuously through December 1994 (the date on which she completed the Application for Immigrant Visa and Alien Registration).

6

13. Question 33 of the Application for Immigrant Visa and Alien Registration stated the following:

> United States laws governing the issuance of visas require each applicant to state whether or not he or she is a member of any class of individuals excluded from admission into the United States. The excludable classes are described below in general terms. You should read carefully the following list and answer YES or NO to each category. The answers you give will assist the consular officer to reach a decision on your eligibility to receive a visa.
>
> EXCEPT AS OTHERWISE PROVIDED BY LAW, ALIENS WITHIN THE FOLLOWING CLASSIFICATIONS ARE INELIGIBLE TO RECEIVE A VISA. DO ANY OF THE FOLLOWING CLASSES APPLY TO YOU?

After listing the various classifications that render an applicant ineligible to receive a visa, the Application for Immigrant Visa and Alien Registration stated:

> If the answer to any of the foregoing questions is YES or if unsure, explain in the following space or on a separate sheet of paper.

Defendant ODEH falsely checked the box marked "No" to each of the following classifications:

> [1] An alien convicted of, or who admits committing a crime involving moral turpitude[.]
>
> [2] An alien convicted or 2 or more offenses for which the aggregate sentences were 5 years or more[.]

7

14. Question 34 of the Application for Immigrant Visa and Alien Registration asked the following:

> Have you ever been arrested, convicted, or ever been in a prison or almshouse, have you ever been the beneficiary of a pardon or an amnesty; have you ever been treated in an institution or hospital or other place for insanity or other mental disease.

Defendant ODEH falsely checked the box marked "No."

15. On or about April 18, 1995, Defendant ODEH, a citizen of Jordan, having received her immigrant visa notwithstanding the false statements in her application referred to in paragraphs 12 – 14 of the General Allegations of this Indictment, immigrated to the United States as a permanent resident.

16. On or about June 2, 2004, Defendant ODEH completed and signed a naturalization application to become a United States citizen (Form N-400). Above her signature, the following certification appeared:

> I certify, under penalty of perjury under the laws of the United States of America, that this application, and the evidence submitted with it, are all true and correct.

17. On or about June 4, 2004, Defendant ODEH filed her naturalization application (Form N-400) with the United States Citizenship and Immigration Services.

18.     Under United States law, in order to be eligible for naturalization an applicant must establish to the satisfaction of the United States Citizenship and Immigration Services that he or she has been lawfully admitted as a permanent resident of the United States. Thus, an applicant who acquired permanent resident status through fraud or misrepresentation, or who was otherwise not lawfully entitled to such status when it was accorded, has never been "lawfully admitted for permanent residence," and may not become a United States citizen.

19.     Under United States law, in order to be eligible for naturalization an otherwise qualified applicant must establish to the satisfaction of the United States Citizenship and Immigration Services that for at least the five years leading up to applying for naturalization, the person "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

20.     In making the determination of whether an applicant for naturalization has demonstrated good moral character, the United States Citizenship and Immigration Services "is not limited to the applicant's conduct during the five years preceding the filing of the petition, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period."

21. By law, various acts must be considered by United States Citizenship and Immigration Services in determining whether a person has good moral character. For example, relevant factors include whether the person has given "false testimony for the purpose of obtaining any benefits" under the Immigration and Naturalization Act; and a person's criminal history, including whether the person has ever been convicted of an offense or imprisoned.

22. In order to provide the United States Citizenship and Immigration Services with information needed to make a determination of, among other things, an applicant's good moral character, the application for naturalization, Form N-400, contains Part 10, section D, entitled "Good Moral Character." The instructions for those questions state the following:

> For the purposes of this application, you must answer "Yes" to the following questions, if applicable, even if your records were sealed or otherwise cleared or if anyone, including a judge, law enforcement officer, or attorney, told you that you no longer have a record.

Each question relating to good moral character is material to the decision of whether or not any applicant, including Defendant ODEH, would be eligible for United States citizenship, that is, each answer had a natural tendency to influence the decision of the United States Citizenship and Immigration Services as to whether or not to grant citizenship.

23. Question 16 of the naturalization application asked the following:

> Have you **EVER** been arrested, cited, or detained by any law enforcement officer (including INS and military officers) for any reason?*

Defendant ODEH falsely checked the box marked "No."

24. Question 17 of the naturalization application asked the following:

> Have you **EVER** been charged with committing any crime or offense?*

Defendant ODEH falsely checked the box marked "No."

25. Question 18 of the naturalization application asked the following:

> Have you **EVER** been convicted of a crime or offense?*

Defendant ODEH falsely checked the box marked "No."

26. Question 21 of the naturalization application asked the following:

> Have you **EVER** been in jail or prison?*

Defendant ODEH falsely checked the box marked "No."

---

*The question is quoted exactly as it appears on the naturalization form, with the word "EVER" in capital letters and in bold.

11

27. At the conclusion of questions 15 – 21, the application stated:

> If you answered "Yes" to any of questions 15 through 21, complete the following table. If you need more space, use a separate sheet of paper to give the same information.

Because a truthful answer by Defendant ODEH to each of questions 16, 17, 18 and 21 would have been "Yes," she was required to but did not complete the table. The table required Defendant ODEH to provide the city, state and country where she was cited, arrested, charged, convicted or detained.

28. Part 10, section D, questions 23 and 24, asked further questions relating to Good Moral Character. Question 23 asked the following:

> Have you **EVER** given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?*

Defendant ODEH falsely checked the box marked "No."

---

*The question is quoted exactly as it appears on the naturalization form, with the word "EVER" in capital letters and in bold.

12

29. Question 24 asked the following:

> Have you **EVER** lied to any U.S. immigration official to gain entry or admission into the United States?*

Defendant ODEH falsely checked the box marked "No."

30. On or about November 3, 2004, an immigration officer interviewed Defendant ODEH in Detroit, Michigan, regarding her naturalization application. During that interview, the immigration officer reviewed with Defendant ODEH the answers she had provided on her naturalization application (Form N-400). Defendant ODEH made seventeen corrections to her application. None of those corrections involved the questions referenced in paragraphs 23 – 29 of the General Allegations of this Indictment. Rather, while under oath, Defendant ODEH reaffirmed the lies stated in paragraphs 23 – 29 of the General Allegations of this Indictment.

31. On or about November 3, 2004, at the conclusion of her naturalization interview, Defendant ODEH again signed her naturalization application, falsely stating "I certify, under penalty of perjury under the laws of the United States of America, that this application, and the evidence submitted with it, are all true and correct."

---

*The question is quoted exactly as it appears on the naturalization form, with the word "EVER" in capital letters and in bold.

32. On or about November 16, 2004, immigration officials approved Defendant ODEH's naturalization application. On or about December 9, 2004, Defendant ODEH was sworn in as a United States citizen in an oath ceremony conducted by the United States District Court, Eastern District of Michigan.

## COUNT ONE

(Unlawful Procurement of Naturalization – 18 U.S.C. § 1425(a))

D-1 RASMIEH YOUSEF ODEH

1. The general allegations set forth above are hereby incorporated by reference as if fully set forth herein.

2. On or about December 9, 2004, in the Eastern District of Michigan, RASMIEH YOUSEF ODEH, also known as "Rasmieh J. Odeh," also known as "Rasmieh Joseph Steve," also known as "Rasmieh Youssuf Odeh," also known as "Rasmieh Yusef Odeh," defendant herein, knowingly procured her naturalization as a United States citizen contrary to law, that is, she procured her citizenship despite her criminal history and despite her having made each of the material false statements set forth in the General Allegations of this Indictment, which false statements related to (A) her criminal history, including her history of imprisonment, as well as to (B) her history of having made false statements for the purpose of receiving an immigration benefit.

In violation of Title 18, United States Code, Section 1425(a).

THIS IS A TRUE BILL.

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON


BARBARA L. MCQUADE
United States Attorney


s/ Jonathan Tukel
JONATHAN TUKEL (P41642)
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9749
jonathan.tukel@usdoj.gov

s/ Kenneth R. Chadwell
KENNETH R. CHADWELL (P39121)
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9698
ken.chadwell@usdoj.gov

s/ Mark Jebson
MARK JEBSON (P53457)
Senior Attorney, Immigration & Customs Enforcement
Office of Chief Counsel
Special Assistant United States Attorney
333 Mount Elliott Street, Suite 2
Detroit, MI 48207
(313) 568-6033
mark.jebson@ice.dhs.gov

Dated: October 17, 2013

| United States District Court<br>Eastern District of Michigan | Criminal Case Co | Case: 2:13-cr-20772<br>Judge: Borman, Paul D.<br>MJ: Grand, David R.<br>Filed: 10-17-2013 At 04:33 PM<br>INDI USA V. SEALED MATTER (DA) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to con

## Reassignment/Recusal Information
This matter was opened in the USAO prior to August 15, 2008 [ ]

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: |

**Case Title:** USA v. RASMIEH YOUSEF ODEH

**County where offense occurred:** Wayne

**Check One:** ☒ Felony   ☐ Misdemeanor   ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:            ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*

## Superseding Case Information

**Superseding to Case No:** _____   **Judge:** _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

October 17, 2013
Date

*Jonathan Tukel* (signature)

JONATHAN TUKEL
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9749
Fax: 313-226-3413
E-Mail address: jonathan.tukel@usdoj.gov
Attorney Bar #:

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.           04/13