UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    CRIMINAL NO. 13-20772

              Plaintiff,

                              HONORABLE PAUL D. BORMAN

vs.

D-1 RASMIEH YOUSEF ODEH,

              Defendant.
_____/

MOTION *IN LIMINE* OF THE UNITED STATES TO EXCLUDE
(1) EVIDENCE RELATING TO CLAIMS OF INNOCENCE
OF UNDERLYING FOREIGN CONVICTIONS AND
(2) ALLEGATIONS OF TORTURE

NOW COMES the United States, pursuant to Federal Rules of Evidence 402 and 403, and for its Motion *In Limine* to Exclude (1) Evidence Relating to Claims of Innocence of Underlying Foreign Convictions and (2) Allegations of Torture, states:

1. The defendant has been charged in an Indictment with Unlawful Procurement of Naturalization, in violation of 18 U.S.C. § 1425(a).

2. Evidence of defendant's factual guilt or innocence for crimes of which she was convicted in a foreign country (Israel) is irrelevant to the question of whether or not she truthfully answered questions on her U.S. naturalization

1

application about whether she ever had been arrested, charged, convicted or imprisoned.  The questions ask about all convictions, valid or invalid, including those which may have been expunged or for which a pardon was given, and the mere fact of conviction is material to the decision of United States Citizenship and Immigration Services as to whether or not to grant naturalization.  Additionally, evidence relating to claims of torture have no relevance to the offense charged here, which is predicated on the historical fact of her having been convicted. While evidence of the circumstances and process relating to a conviction would have been relevant to United States Citizenship and Immigration Services had defendant disclosed her criminal record in her naturalization application (as she was obligated by law to do), it has no relevance to this case.  Rather, this case focuses on the truthfulness of her answers in the immigration process, not the level of due process afforded her in Israel.

3.  Even if the evidence is relevant, it nevertheless should be excluded under Federal Rule of Evidence 403, because any probative value would be significantly outweighed by the risk of misleading the jury, confusing the issues, and wasting time.  Permitting evidence regarding factual guilt or innocence of the foreign charges would lead to a trial about a trial which took place 45 years ago, under very different procedural rules and in a foreign language.  Similarly, claims of torture, whether true or not, have no direct application to the offense charged here.

2

Rather, such evidence would suggest to a jury that it render its verdict based on whether it believed defendant had been mistreated or tortured overseas, instead of whether she violated United States immigration law here.  Such evidence thus runs afoul of Fed. R. Evid. 403.

4. In further support of the motion, the government relies on the accompanying brief filed contemporaneously herewith.

5. Pursuant to Local Rule 7.1(a)(2)(B), on July 9, 2014, by email, the undersigned sought concurrence of Michael Deutsch, James Fennerty and William Goodman, counsel for the defendant, for the relief requested herein.  As of the filing of this motion no response was received to that request, necessitating the filing of the instant motion and brief.

3

WHEREFORE, the government prays that the Court grant its motion, and rule that evidence relating to factual guilt or innocence of the foreign charges, as well as evidence or allegations relating to claims of torture or mistreatment overseas shall not be admissible at trial.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney

s/Jonathan Tukel                          s/Mark J. Jebson
JONATHAN TUKEL (P41642)          MARK J. JEBSON (P53457)
Assistant United States Attorney     Special Assistant U.S. Attorney
211 West Fort Street, Suite 2001     211 W. Fort, Suite 2001
Detroit, MI 48226                         Detroit, MI 48226
(313) 226-9749                            (313) 226-9698
jonathan.tukel@usdoj.gov             mark.jebson@dhs.gov

Dated: July 10, 2014

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,              CRIMINAL NO. 13-20772

                  Plaintiff,

                                 HONORABLE PAUL D. BORMAN

vs.

D-1 RASMIEH YOUSEF ODEH,

                  Defendant.
_____/

BRIEF IN SUPPORT OF MOTION *IN LIMINE* OF UNITED STATES TO
EXCLUDE EVIDENCE RELATING TO CLAIMS OF INNOCENCE OF
UNDERLYING ISRAELI CONVICTIONS AND
ALLEGATIONS OF TORTURE

INTRODUCTION

The defendant is charged with having procured her United States citizenship illegally, in violation of 18 U.S.C. § 1425(a), which makes it a crime to "knowingly procure[] or attempt[] to procure, contrary to law, [his or her] naturalization…."  In the present case, the indictment charges that the defendant procured her naturalization unlawfully by making false statements in her Form N-400, Application for Naturalization.  Those false statements related to standard questions about whether she had ever been arrested for, charged with, convicted of, or served time for any offense.  In fact, Defendant had been arrested, charged,

1

convicted and imprisoned in Israel for participation in two terrorist bombings there, facts which she falsified in her Form N-400. Defendant reiterated those false statements a second time when interviewed by a United States Citizenship and Immigration Services officer as part of the immigration process.

Based on public statements, it appears that Defendant's attorney plans to make two arguments at trial: that (1) defendant in fact is not guilty of participating in the bombings in Israel; and (2) that the evidence which was used to convict her in Israel was obtained by torture or by other means which, at a minimum, would violate United States Constitutional norms if the charges had been brought here. (*See, e.g.*, https://www.youtube.com/watch?index=2&list=PL7on0R2rskVFoBOW iIq2hol-t-ORgy7OF&v=vVciKRYfKWY&app=desktop) (press conference of Defendant's attorney and supporters).

Without conceding the factual correctness of either assertion, the United States hereby moves to bar such evidence as irrelevant. Simply put, and as is explained more fully herein, the validity, by American standards, of a foreign conviction is not relevant to whether it was required to be disclosed in a naturalization application. Moreover, even if relevant, such evidence should be barred under Fed. R. Evid. 403, because any probative value of the evidence would be substantially outweighed by the fact that it would confuse the issues, mislead

the jury and waste substantial amounts of time.[1]

## ARGUMENT

A.   EVIDENCE REGARDING DEFENDANT'S GUILT OR
     INNOCENCE OF THE UNDERLYING FOREIGN CONVICTIONS,
     AND WHETHER OR NOT THOSE CONVICTIONS WERE
     OBTAINED ILLEGALLY IS IRRELEVANT TO THIS CASE,
     IN WHICH DEFENDANT DENIED THAT SHE EVER HAD
     BEEN ARRESTED, CHARGED, CONVICTED OR IMPRISONED

Under the Federal Rules, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence to determining the action." Fed.R.Evid. 401. "Irrelevant evidence is not admissible." Fed.R.Evid. 402.

The elements of the offense charged, 18 U.S.C. § 1425(a), are: (1) the defendant is a naturalized citizen who misrepresented or concealed some fact, (2) the misrepresentation or concealment was made knowingly, (3) the fact was material, and (4) the defendant procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988); *United States v. Latchin*, 554 F.3d 709, 713-714 (7th Cir. 2009). The

---

[1]Some evidence relating to defendant's allegations of torture will of necessity be introduced in the record herein, because those allegations were litigated in the 1969 trial in Israel (and resolved contrary to defendant's allegations). Those allegations thus are inextricably intertwined with the Israeli trial record, large portions of which will be exhibits here. The instant motion does not seek to preclude that evidence, but only additional evidence or argument not part of the Israeli trial record.

3

government is not required to show that disclosure of the true facts would have made the defendant ineligible for citizenship. *Id*.; *see also United States v. Kalymon*, 541 F.3d 624, 635 (6th Cir. 2008); *United States v. Demjanjuk*, 367 F.3d 623, 637 (6th Cir. 2004). Rather, in order to prove that the defendant procured her citizenship as a result of the misrepresentation or concealment, the government must produce evidence sufficient to raise a fair inference that the defendant was ineligible for citizenship. *Kungys*, 485 U.S. at 783-784; *Latchin*, 554 F.3d at 714-715; *United States v. Puerta*, 982 F.2d 1297, 1303-1305 (9th Cir. 1992).

By law, an otherwise qualified applicant for naturalization must establish to the satisfaction of United States Citizenship and Immigration Services that for at least the five years preceding the application the person "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well-disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a). In order to effectuate those requirements, the N-400 application asks a series of questions about an applicant's background, including criminal history. In making the determination of whether an applicant for naturalization has demonstrated good moral character, United States Citizenship and Immigration Services "is not limited to the applicant's conduct during the five years preceding the filing of the petition, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that

4

period."  8 U.S.C. § 1427(e).  Consequently, the N-400 asks the criminal history

questions in terms of whether an applicant has "**EVER"** done certain things.  Form

N-400, Part 10, Section D, questions 16-18, 21, 23-24 (bold and capitalization in

N-400).[2]  The instructions for the criminal history section are similarly broad:

> For the purposes of this application, you must answer
> "Yes" to the following questions, if applicable, even if
> your records were sealed or otherwise cleared or if
> anyone, including a judge, law enforcement officer, or
> attorney, told you that you no longer have a record.

Finally, the term conviction is statutorily defined for purposes of the

Immigration and Nationality Act:

> The term "conviction" means, with respect to an alien, a formal
> judgment of guilt of the alien entered by a court or, if
> adjudication of guilt has been withheld, where – (i) a judge or
> jury has found the alien guilty or the alien has entered a plea of
> guilty or nolo contendere or has admitted sufficient facts to
> warrant a finding of guilt, and (ii) the judge has ordered some
> form of punishment, penalty, or restraint on the alien's liberty
> to be imposed.

8 U.S.C. § 1101(a)(48)(A).

A  purpose  of  the  N-400  is  to  provide  United  States  Citizenship  and

Immigration  Services  with  information  sufficient  to  conduct  an  investigation  of

---

2 "Ever" is not defined by statute and thus has its common meaning.  *See Smith v.
United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute,
we normally construe it in accord with its ordinary or natural meaning.")  The
word "ever" means "At any time; at any period or point of time."  *See*
http://www.webster-dictionary.net/definition/ever.

and make an informed judgment regarding an applicant's background. A "Yes" answer to any of the moral character questions will not necessarily disqualify an applicant, but it will flag for USCIS that an area has to be examined more closely. Such additional investigation can include questioning the applicant under oath, requesting documents, and seeking materials from other governments.

Thus, in some respects the role of the N-400 is akin to the "notice pleading" requirement of the Federal Rules of Civil Procedure, calling to the attention of USCIS possible areas of issue and thus permitting it to conduct additional investigation prior to making a decision on the merits. *See Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 576 (Stevens, J., dissenting) (citations omitted) ("The Federal Rules of Civil Procedure replaced fact pleading with notice pleading" . . . because "Experience has shown that we cannot expect the proof of the case to be made through the pleadings, and that such proof is really not their function. We can expect a general statement distinguishing the case from all others, so that the manner and form of trial and remedy expected are clear, and so that a permanent judgment will result.").

Obviously, under such a notice pleading regime, not every law enforcement contact or aspect of criminal history will disqualify an applicant (if fully and truthfully disclosed); the instructions do mean, however, that USCIS must be advised of all material matters, i.e., all matters which, if true, had a natural

tendency to influence, or were capable of influencing, the decision of United States

Citizenship and Immigration Services to approve or deny the application. *Kungys*

*v. United States*, 485 U.S. 759, 770 (1988); *United States v. Latchin*, 554 F.3d 709,

713 (7th Cir. 2009).

It would appear that defendant's theory of the case is that instead of having

to disclose accurately and truthfully all criminal convictions per the directions on

the Form N-400, she be permitted to redefine "conviction" on her own terms: a

formal judgment of guilt which Defendant Odeh deems valid under her own

standards of due process. See www.youtube.com/watch?index=2&list=PL7on0R

2rskVFoBOWiIq2hol-t-ORgy7OF&v=vVciKRYfKWY&app=desktop), at 30:05 -

30:45 (Defendant's counsel asking rhetorically whether the N-400 means all

convictions, or only "valid" ones). Nevertheless, it is self-evident in light of the

instructions to the N-400, the use of the word "**EVER**" and the statutory definition

of the word "conviction" that the N-400 refers to all convictions in one's life. *See*

*United States v. DeZarn*, 157 F.3d 1042, 1049 (6th Cir. 1998) (citation omitted)

("When the answer given is responsive to the question asked and 'it is entirely

reasonable to expect a defendant to have understood the terms used in the

question,'" a charge of perjury properly lies.) Simply put, under these

circumstances, evidence challenging the "validity" of the foreign conviction, either

factual or procedural, is irrelevant and should not be admitted at trial.

7

The ruling of inadmissibility sought herein would work no unfairness in the immigration process. At trial, the government will offer evidence that applicants are permitted to (and do) provide explanations for an answer of "Yes" to any of the N-400 questions, and that immigration officials can and do permit individuals to gain naturalization if the foreign evidence of criminality is not deemed satisfactory under U.S. law. But the mere fact of being charged or convicted or imprisoned, standing alone, *is* of importance to immigration officials, and the simple facts are that defendant was charged, convicted, and imprisoned and that she lied when she denied those facts. Thus, if defendant had disclosed her convictions to United States Citizenship and Immigration Services with an explanation for their invalidity, USCIS could have evaluated her explanation and possibly accepted it. But the instant trial is not a super Citizenship and Immigration Services hearing. What is relevant here is not the truthfulness or accuracy of the Israeli charges themselves, but only whether defendant was untruthful when she denied them. For that reason, the Court should rule that evidence seeking to negate the validity of the underlying charges, either through claims of factual innocence or claims of torture, is irrelevant and inadmissible. Such a ruling would properly cabin these proceedings to what they are intended to be: a determination of whether defendant gave false answers in her application for naturalization. It also would cabin to administrative immigration proceedings evidence which is relevant to those

8

proceedings, i.e., whether an applicant had an explanation for a properly-disclosed

conviction, such as that it was based on a coerced confession.  But such evidence is

simply not relevant here.


B.     EVEN IF EVIDENCE REGARDING DEFENDANT'S GUILT OR
       INNOCENCE IS RELEVANT, AND EVEN IF THE QUESTION OF
       WHETHER OR NOT THE CONVICTIONS WERE OBTAINED
       UNLAWFULLY IS RELEVANT, SUCH EVIDENCE NEVERTHELESS
       SHOULD BE EXCLUDED UNDER RULE 403 BECAUSE ANY
       PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY
       THE LIKELIHOOD OF CONFUSING THE ISSUES AND
       MISLEADING THE JURY


       Federal Rule of Evidence 403 provides:

       The court may exclude relevant evidence if its probative value is
       substantially outweighed by a danger of one or more of the following:
       unfair prejudice, confusing the issues, misleading the jury, undue
       delay, wasting time, or needlessly presenting cumulative evidence.


       "'Unfair prejudice'" as used in Rule 403 does not mean the damage to a

[party's] case that results from the legitimate probative force of the evidence;

rather, it refers to evidence which tends to suggest decision on an improper basis."

*United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988) (citations omitted).

"'Unfair prejudice' means an undue tendency to suggest decision on an improper

basis, commonly, though not necessarily, an emotional one.'"   *United States v.*

*Whittington*, 455 F.3d 736, 739 (6th Cir. 2006).

9

As noted in Argument A, *supra*., evidence as to the factual validity of defendant's underlying criminal record is unrelated to the issue of whether she falsely answered questions on her Form N-400 about her background.  But even if such evidence were relevant, it nevertheless should be excluded at trial under Fed. R. Evid. 403.  To begin with, the mere fact of imprisonment in a country in which innocents are imprisoned without due process of law[3] does not mean that everyone imprisoned or even tortured there was in fact innocent.  For instance, even in a lawless totalitarian state such as the Soviet Union, political prisoners were not the only ones in the Gulag; actual criminals also were inmates.  (See U.S. National Park Service *Gulag Factsheet*, http://www.nps.gov/malu/parknews/upload/Gulag_Fact_Sheet.pdf).  Thus, whether or not defendant was "tortured" would not, by itself, make actual guilt or innocence "more or less probable than it would be without the evidence."   Fed. R. Evid. 402(a).  And it would shed no light whatsoever on whether she had been arrested, charged, convicted or imprisoned, the questions actually asked on the Form N-400.  However, ruling such subjects admissible creates a substantial possibility of misleading the jury into believing that if defendant was tortured, and even if the elements of the immigration crime charged are proven at trial that she nevertheless must be acquitted.   It also

---

[3] As previously noted, the nation in which defendant was convicted, Israel, does not fall in that category.

10

significantly increases the risk that a jury would make a decision based on sympathy, contrary to law.  See Sixth Circuit Pattern Jury Instruction 1.02(4) (2005 Ed.).

Such evidence obviously would have significant capacity to confuse and mislead the jury.  Each of the following questions likely would be raised or considered by the jury if such evidence is admitted:

1. What should our verdict be if we believe she lied on her application, she is innocent of the bombings, and she was tortured?

2. What should our verdict be if we believe she lied on her application, she committed the bombings, and she was tortured?

3. What should our verdict be if all of us believe she lied on her application, some of us believe she is innocent of the bombings, and none of us believe she was tortured?

4. What should our verdict be if most of us believe she lied on her application, but none of us believe she is innocent of the bombings or was tortured?

Moreover, in order to avoid having to delve into the question of defendant's factual guilt or innocence of the underlying charges, the government purposefully did not charge that she falsely answered the following questions:

9.  Have you **EVER** been a member of or in any way associated (*either directly or indirectly*) with:

a. The Communist Party?
b. Any other totalitarian party?
c. A terrorist organization?

11

> 11.   Have you **EVER** persecuted (*either directly or indirectly*) any person because of race, religion, national origin, membership in a particular social group, or political opinion?

N-400, Part 10, Section B, questions 9 and 11.  Unlike the answers to the questions regarding arrest, conviction and imprisonment, which rest on easily provable historical facts unaffected by whether or not defendant was innocent or tortured, questions 9 and 11 each require proof of defendant's underlying guilt in order to prove that her answers of "Yes" were false.  The intentional omission from the indictment of allegations regarding those questions reinforces that the issue of defendant's guilt or innocence of the bombing, and whether or not she was tortured are not proper subjects for the instant trial.  Thus, evidence as to them should be excluded under Federal Rule of Evidence 403.

<u>CONCLUSION</u>

For the reasons stated, the Court should rule evidence relating to defendant's guilt or innocence of the foreign charges, and evidence of defendant's alleged torture inadmissible under Federal Rules of Evidence 402 and 403.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney

<u>s/Jonathan Tukel</u>                               <u>s/Mark J. Jebson</u>
JONATHAN TUKEL (P41642)          MARK J. JEBSON (P53457)
Assistant United States Attorney        Special Assistant U.S. Attorney
211 West Fort Street, Suite 2001      211 W. Fort, Suite 2001
Detroit, MI 48226                           Detroit, MI 48226
(313) 226-9749                              (313) 226-9698
jonathan.tukel@usdoj.gov              mark.jebson@dhs.gov


Dated: July 10, 2014

13

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2014, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF filers.

s/Jonathan Tukel                      s/Mark J. Jebson
JONATHAN TUKEL (P41642)      MARK J. JEBSON (P53457)
Assistant United States Attorney     Special Assistant U.S. Attorney
211 West Fort Street, Suite 2001     211 W. Fort, Suite 2001
Detroit, MI 48226                    Detroit, MI 48226
(313) 226-9749                      (313) 226-9698
jonathan.tukel@usdoj.gov        mark.jebson@dhs.gov

Dated: July 10, 2014

14