UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,         Case No. 13-cr-20772

                              Paul D. Borman
v.                                    United States District Judge

RASMIEH YOUSEF ODEH,

        Defendant.

_____/

OPINION AND ORDER DENYING DEFENDANT'S MOTION TO RECUSE (ECF NO. 44)

On July 14, 2014, Defendant filed a motion, pursuant to 28 U.S.C. §§ 455(a) and (b)(1), seeking the disqualification of the undersigned from "ruling on any substantive motions or presiding over the trial of" this case. (ECF No. 44.) The Plaintiff filed a Response (ECF No. 53) and Defendant filed a Reply (ECF No. 55). Thereafter, Defendant filed a supplemental document. (ECF No. 57.) The Court has concluded that oral argument would not assist the Court in rendering its decision on the motion. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court DENIES the motion.

**I.    BACKGROUND**

Although its Motion to Recuse is replete with discussion of the Court's history of charitable contributions and fund raising on behalf of the Jewish people and trips to Israel, Defendant's Reply asserts that its motion for recusal is not based upon this Court's "religion or his charitable work on behalf of Jewish people," nor "does it have anything to do with his trips to Israel as a tourist." (Reply 1.) Rather, Defendant suggests, the motion is based on "the Court's life-long involvement

1

in support of the State of Israel, organizing trips to Israel for 'hundreds' of Detroiters, including members of the Michigan State legislature, and substantial fundraising to help the State of Israel." *Id*.

In support of the motion, Defendant relies primarily upon a biography of the undersigned that was prepared in connection with his receipt in 2007 of The Jewish Federation of Metropolitan Detroit's Fred M. Butzel Award, "recognized as the highest honor the Detroit Jewish community can bestow upon its leaders." (Mot. Ex. 1, Jewish Federation and United Jewish Foundation of Metropolitan Detroit Annual Report to the Community, 2006-2007, p. 2.)  The biographical statement summarizes my volunteer work for the Jewish Federation of Metropolitan Detroit, an organization that raises funds for providing social services within the Detroit Jewish community, the State of Israel, and Jewish communities throughout the world. *Id*.  Defendant notes that I co-chaired a Michigan Legislators trip to Israel in 1990: this is when I served as President of the Federation's Jewish Community Relations Committee.  That trip occurred four years before I was appointed to the federal bench, as did other Israel missions that I co-chaired on behalf of the Jewish Federation between 1980 and 1988.  I have also traveled as a tourist on other Federation missions, last in 2007.

From this, Defendant concludes that I must recuse myself from this case because my life-long support of, and my fund raising efforts on behalf of, the Detroit Jewish Federation, a local social service organization which distributes some of its funds to provide social services in Israel and other international Jewish communities, necessarily predispose the Court against this Defendant. Further, with not a shred of factual support, Defendant makes the startling claim that in the course of trips to Israel the Court necessarily has become personally privy to "extra-judicial information

about the issues of torture and the operations of the military courts raised by Defendant in this case."

## II.     THE LAW OF DISQUALIFICATION UNDER 28 U.S.C. §§ 455(a) and (b)(1)

Defendant moves for the Court's recusal under 28 U.S.C. §§ 455(a) and (b)(1), which require, respectively, that a judge disqualify himself if his "impartiality might reasonably be questioned," or if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. §§ 445(a), (b)(1). "[A] judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise. The burden is not on the judge to prove that he is impartial." *Scott v. Metropolitan Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007) (internal quotation marks and citations omitted).

The Sixth Circuit has stated that "a district judge must recuse himself where 'a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Buell v. Mitchell*, 274 F.3d 337, 345 (6th Cir. 2001) (quoting *United States v. Nelson*, 922 F.2d 311, 319 (6th Cir. 1990)). In *Buell*, the habeas petitioner, who had been sentenced to death for his crimes, challenged among other things the constitutionality of the Ohio death penalty statute. The petitioner sought the recusal of the United States District Judge presiding over the case, asserting that when he was a member of the Ohio senate, he sponsored a bill restoring Ohio's death penalty, and also stating that the judge had expressed support for the death penalty while campaigning for Lieutenant Governor of Ohio. *Id.* at 345. The Sixth Circuit noted that section 455(a) requires a "fact-specific analysis of the judge's prior activity," and found no support for recusal:

3

> Judge Matia's sponsorship of legislation reinstating the death penalty in Ohio and opinions in favor of the death penalty while campaigning for public office are not sufficient to demonstrate that his 'impartiality might reasonably be questioned' in a particular case, any more than support for civil rights laws as a legislator would disqualify a judge from hearing all discrimination cases.

274 F.3d at 347.

The law of recusal is clear that a judge's prior activities relating to his religious convictions are not a valid basis for questioning his impartiality in a particular case. In *United States v. El-Gabrowny*, 844 F. Supp. 955 (S.D.N.Y. 1994), United States District Court Judge Mukasey refused to recuse himself from deciding a charge of conspiracy in connection with the World Trade Center bombings in the face of assertions that his Jewish heritage and faith, and alleged ties to political Zionism, rendered him incapable of delivering impartial justice to the defendant. Discussing the standards that govern under § 455(a), Judge Mukasey remarked:

> [T]o say that § 455(a) requires concern for appearances is not to say that it requires concern for mirages. The standard is an objective one, and is applied not by considering what a straw poll of the only partly informed man-in-the-street would show—but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge. Section 455(a) was not meant to require disqualification every time one party can make some argument, no matter how unreasonable, that the appearance of prejudice would result. Indeed, a judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequence of his expected adverse decision.... Nothing in [§ 455(a) ] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial.

844 F. Supp. at 962 (internal quotation marks and citations omitted) (alteration in original). Rejecting defendant's suggestion that his religious heritage and relationship to and sympathies with the State of Israel would naturally create a sympathy with and partiality toward the victims of the bombing, who had been identified with the State of Israel, Judge Mukasey concluded:

> Passing the historical curiosity that the standard El–Gabrowny advocates would

> disqualify not only an obscure district judge such as the author of this opinion, but also Justices Brandeis and Frankfurter, who would be barred from reviewing this case if they were alive and sitting today, each having been both a Jew and a Zionist, see P. Strum, Louis D. Brandeis 268 (Harvard University Press 1984), whether the presiding judge is an Orthodox Jew or a Zionist or some combination of the two, or neither, is utterly irrelevant to this case. That someone with an imagination or a motive might hallucinate relevance is not the standard, and therefore cannot provide the basis for decision.

844 F. Supp. at 962.

Judge Mukasey acknowledged that he, like other judges before him facing allegations of impartiality, drew "both authority and inspiration" from then-United States District Judge Leon Higginbotham's opinion in *Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs*, 388 F. Supp. 155 (D. Pa. 1974).

In arriving at his decision to deny recusal in *Operating Engineers*, Judge Higginbotham wrote:

> Obviously, black judges should not decide legal issues on the basis of race. During my ten years on this court, I have not done so. I have, depending on the facts, sentenced numerous black and white criminal defendants to substantial terms of imprisonment. I have placed other criminal defendants, both black and white, on probation. Depending on the relevant fact, some civil cases have been decided in favor of and others against black litigants. In this case, plaintiffs similarly will enjoy no advantage because they are black; defendants will not be disadvantaged because some of them are white. The outcome of this case will be directed by what the evidence shows, not by the race of the litigants.
>
> I am pleased to see that my distinguished colleagues on the bench who are Jewish serve on committees of the Jew[ish]-Community Relations Council, on the boards of Jewish publications, and are active in other affairs of the Jewish community. I respect them, for they recognize that the American experience has often been marred by pervasive anti-Semitism. I would think less of them if they felt that they had to repudiate their heritage in order to be impartial judges.
>
> Many Catholic judges have been active in their church, as have been Episcopalian and other Protestant judges. It would be a tragic day for the nation and the judiciary if a myopic vision of the judge's role should prevail, a vision that required judges to refrain from participating in their churches, in their nonpolitical community affairs,

> in their universities. So long as Jewish judges preside over matters where Jewish and Gentile litigants disagree; so long as Protestant judges preside over matters where Protestants and Catholic litigants disagree; so long as white judges preside over matters where white and black litigants disagree, I will preside over matters where black and white litigants disagree.

388 F. Supp. at 180-81.  Judge Higginbotham observed, as the Sixth Circuit did in *Buell*, that absent allegations that a judge's prior activities "were specifically connected to" the matter under his consideration, *see Buell*, 274 F.3d at 347, impartiality as understood in § 455 has not been shown:

> The facts pleaded will not suffice to show the personal bias required by the statute if they go to the background and associations of the judge rather than to his appraisal of a party personally. (A judge) must have neighbors, friends and acquaintances, business and social relations, and be a part of his day and generation. * * * the ordinary results of such associations and the impressions they create in the mind of the judge are not the 'personal bias or prejudice' to which the statute refers.

388 F. Supp. at 159 (internal quotation marks and citations omitted) (alterations in original). Allegations that "relate to [a judge's] background and [] associations, not to any party in th[e] action personally, [] are therefore insufficient to show the personal bias required by the statute." *Id*. at 160 (alterations added).

Similarly, in *Idaho v. Freeman*, 507 F. Supp. 706 (D. Idaho 1981), Judge Marion Callister, who held a leadership position in the Church of Jesus Christ of Latter-day Saints, which had publicly opposed the Equal Rights Amendment, refused to recuse himself in a case challenging the extension of the amendment's ratification deadline, an action the Church had specifically opposed. Speaking to the separateness of his role as a judge and his participation in his church, Judge Callister rejected the challenge to his impartiality which he found was "based solely upon the teachings of the church to which [he] belong[ed]," and denied that his religion would influence his interpretation of the law or that his religion could ever "take precedence over his sworn duty to uphold the Constitution and laws of the United States." *Id*. at 710-11.  Then United States Department of Justice Solicitor

General Wade McCree refused the Civil Division's request that he authorize an immediate appeal of Judge Callister's ruling:

> I have given weight to Judge Callister's discussion of the separation of church and state in this country and to his statement that '(a)s a judge, I have no obligation to the church to interpret the law in any manner other than that which is required under Constitution and the Oath which I have taken.' . . . It is my firm opinion . . . that the religious beliefs or affiliations of a federal judge should not be the basis for appeal in a case such as this, especially where that judge has forthrightly expressed his unequivocal ability and intent to decide the case solely according to law.

507 F. Supp. at 711, n. 2. Numerous cases follow this reasoning. *See Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659-60 (10th Cir. 2002) (finding no abuse of discretion in district judge's refusal to recuse himself from the case because of his membership in the Episcopal church, reiterating Judge Higginbotham's conclusion that "facts pleaded will not suffice to show the personal bias required by the statute if they go to the background and association of the judge rather than to his appraisal of a party personally"); *MacDraw, Inc. v. CIT Grp. Equip. Financing, Inc.*, 138 F.3d 33, 37-38 (2d Cir. 1998) (noting that courts "have repeatedly held that matters such as race or ethnicity are improper bases for challenging a judge's impartiality," and finding no abuse of discretion in district court's imposition of sanctions for counsel's "discourteous" and "degrading" suggestions of his racial bias, which the Second Circuit agreed were "insulting and smacked of intimidation"); *Menora v. Illinois High School Ass'n*, 527 F. Supp. 632, 634-35 (D.C. Ill. 1981) (Judge Milton Shadur refused to recuse himself in a case seeking to prevent Jewish youth from wearing yarmulkes while participating in interscholastic sports, despite his prior involvement with the American Jewish Congress, noting both Judge Higginbotham's and Judge Callister's similar defense of their impartiality, and rejecting the assumption that support of certain Jewish organizations was equivalent to agreement with every action taken or tenet held by that

organization). *See also Perry v. Schwarzenegger*, 790 F. Supp. 2d 1119, 1133 (N.D. Cal. 2011), *aff'd sub nom*, *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), *vacated on other grounds sub nom. Hollingsworth v. Perry*, __U.S.__, 133 S. Ct. 2652 (2013) (denying motion to recuse based on allegations of Judge Walker's alleged partiality to same-sex couples desiring to be married, noting the failure to cite any concrete evidence to support the presumption that he would be incapable of being impartial despite his own long-term same-sex relationship).

## III.   ANALYSIS

Defendant claims not to challenge my "charitable work on behalf of Jewish people" or my "trips to Israel as a tourist." Yet this is the principal basis of the factual allegations relied upon in questioning my ability to judge this case impartially.[1] Defendant misrepresents the nature of my actual work. Based upon statements contained in a biography created in connection with my receipt from the Detroit Jewish Federation of an Award for my work on behalf of the Jewish Federation, Defendant leaps to the conclusion that I have inside information regarding the "Israeli military legal system in the Occupied West Bank," that will affect my ability to be impartial in this case. Not a single piece of factual evidence is offered to support this baseless assertions.

The Michigan Legislators trip in 1990 preceded my appointment to the bench, as did any Federation missions that I co-chaired. Federation trips to Israel following my appointment in 1994, lastly in 2007, were as a tourist. All of my fund raising efforts for and giving to the Jewish Federation, as explained in the biographical statement on which Defendant relies, has been "to

---

[1] Defendant, even after the Government Response clarifying that I am not the Paul Borman that is married to Marlene Borman, yesterday filed supplemental documents containing tax information related to my cousin's family. Those documents, and more specifically my cousin's charitable giving, have nothing at all to do with me.

further the Jewish community's interest and involvement in programs to alleviate hunger, to promote local African-American-Jewish relations and Arab-American Jewish relations," and to fund social service efforts in the diaspora and the State of Israel. Defendant offers not a shred of evidence, nor even a factual assertion to support the suggestion, that I was made "privy to extra-judicial information" about the subject matter of this trial. Defendant states that "[a]s a respected jurist, it is logical that [I] *must have* made inquiries of Israeli officials about the persistent complaints of torture and illegality of the Occupation and the military court system," and that it is "*more than likely*" that I received explanations from Israeli officials of an extra-judicial nature that "*can only*" affect my impartiality. (Mot. 4.) (Emphasis added.) These factually baseless allegations are irresponsible speculation.

Like every one of my colleagues on the bench, I have a history and a heritage, but neither interferes with my ability to administer impartial justice to Ms. Odeh or to the Government. "'It appears to be an inescapable part of our system that judges are drawn primarily from lawyers who have participated in public and political affairs.'" *Buell*, 274 F.3d at 347 (quoting *United States v. Alabama*, 828 F.2d 1532, 1543 (11th Cir. 1987). My relationship to my faith and my heritage through my activity on behalf of the Detroit Jewish Federation, reads nothing like the innuendo and rank speculation that infects Defendant's motion. As Judge Higginbotham first observed and as numerous courts have similarly concluded, "[t]he facts pleaded will not suffice to show the personal bias required by the statute if they go to the background and associations of the judge rather than to his appraisal of a party personally." 388 F. Supp. at 159. The facts pleaded here go to my background and associations with the Detroit Jewish Federation and do not suffice to demonstrate personal bias against this Defendant. No reasonable person with knowledge of all the facts, and

more particularly the lack of facts, could conclude that I will be unable to fairly rule on matters in this case, or that I have a personal bias against Ms. Odeh or personal knowledge regarding disputed evidentiary issues in this case.

### III. CONCLUSION

Twenty years ago nearly to the day, I swore an oath to "administer justice without respect to persons, and [to] do equal right to the poor and to the rich, and [to] faithfully and impartially discharge and perform all the duties incumbent upon me [] under the Constitution and laws of the United States." 28 U.S.C. § 453. I have honored this oath every day, and will continue to do so, as I preside over this case and all cases in this Court. I unequivocally express my ability and intent to decide this case solely according to law. Defendant has not provided facts that would permit a reasonable, objective person to question this Court's impartiality. Defendant's motion strikes at the very heart of a Federal Judge's pledge to administer impartial justice, and does so with careless and rank speculation.

The Court concludes that disqualification is not required and the Defendant's motion is DENIED.

IT IS SO ORDERED.

s/Paul D. Borman  
Paul D. Borman  
United States District Judge

Dated: July 31, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 31, 2014.

                                              s/Deborah Tofil
                                              Case Manager