UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                              Case No. 13-cr-20772
vs.                             HON. GERSHWIN A. DRAIN

RASMIEH ODEH,

      Defendant.
_____/

**ORDER DENYING AMENDED MOTION FOR NEW TRIAL [#142] AND DENYING AMENDED MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT [#143]**

**I.    INTRODUCTION**

Following a jury trial, Defendant Rasmieh Odeh was found guilty of the single charge in the Indictment, unlawful procurement of citizenship, in violation of 18 U.S.C. § 1425(a). Presently before the Court are the following motions: (1) Defendant's Amended[1] Motion for New Trial, filed on November 21, 2014, and (2)

---

[1] On November 17, 2014, Defendant improperly filed a single Motion for Judgment Notwithstanding the Verdict and for a New Trial without a supporting brief. *See* Dkt. No. 136. The Government moved to strike Defendant's Motion because the Motion was procedurally deficient among other asserted errors. *See* Dkt. No. 140. The Defendant thereafter filed the Amended Motions that are now before the Court. *See* Dkt. Nos. 142, 143, and 145.

Defendant's Amended Motion for Judgment Notwithstanding the Verdict, also filed on November 21, 2014. The Government has filed Responses in Opposition to the present motions.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the resolution of Defendant's pending motions. As such, her motions will be determined on the briefs submitted. *See* E.D. Mich. L. Cr. R. 12.1; E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court will deny Defendant's Amended Motion for New Trial and Defendant's Amended Motion for Judgment Notwithstanding the Verdict.

### II. LAW & ANALYSIS

#### A. Defendant's Motion for New Trial

Federal Rule of Criminal Procedure 33(a) governs a criminal defendant's request for new trial and states in relevant part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Sixth Circuit has held that "it is widely agreed that Rule 33's 'interests of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

As an initial matter, Defendant's Motion for a New Trial is so lacking in legal

authority and argument, it should be denied on this basis alone. Defendant claims the Court committed nine legal errors, yet fails to cite a single case, statute, rule or other authority supporting her assertion. Defendant did not even include the legal standard for granting new trials. Nor does she develop her arguments in any meaningful way. Moreover, it is not clear why Defendant re-raises numerous arguments already thoroughly considered and rejected by this Court, particularly in light of the fact that she offers no new arguments explaining why this Court's original conclusions were incorrect.

Defendant first argues the Court committed error in ruling that 18 U.S.C. § 1425(a) is a general intent crime. Here, Defendant perfunctorily rehashes her argument that § 1425(a) is a specific intent crime. Similar to her previous argument on this issue, Defendant fails to provide the Court with any authority supporting her contention that § 1425(a) is a specific intent crime.[2] *See United States v. Pasillas-Gaytan*, 192 F.3d 864, 869 (9th Cir. 1999) (finding § 1425 requires proof that the defendant either "knew he was ineligible for naturalization due to his criminal record, or knowingly misrepresented his criminal record in his application or interview.");

---

[2] This Court thoroughly reviewed this issue and previously noted the lack of any supporting authority from Defendant concerning her claim that § 1425(a) is a specific intent crime. *See* Dkt. No. 119 at 5 ("Defendant cannot seriously dispute the lack of authority supporting her position that unlawful procurement of naturalization under § 1425 is a specific intent crime.")

*United States v. Aquino*, No. 1:07cr428, 2008 U.S. Dist. LEXIS 7635, *7 (N.D. Ohio Feb. 1, 2008) (concluding that "because §1425 requires only 'knowing' conduct rather than imposing the stricter 'willful' requirement, the defendant did not have to know that procuring naturalization was a criminal act."). This argument fails to demonstrate the interests of justice require a new trial.

Next, Defendant argues that she should have been allowed to call her expert witness, Dr. Mary Fabri, to establish that she suffers from Post Traumatic Stress Disorder ("PTSD"). The Court has previously explained that because § 1425(a) is a general intent crime, this type of psychological evidence is inadmissible to negate *mens rea*. *See United States v. Kines*, 246 F.3d 800, 806 (6th Cir. 2001); *United States v. Gonyea*, 140 F.3d 649, 651 (6th Cir. 1998). Defendant offers no contrary authority and nor could she considering the law is well-settled in this circuit concerning the admission of this type of evidence to negate the *mens rea* required for establishing a general intent crime.

Additionally, Defendant's suggestion that even if § 1425(a) is a general intent crime, she should have been allowed to present this psychological evidence as a defense to the crime charged in the Indictment is without merit. It is also beyond dispute that diminished capacity evidence is irrelevant to the *mens rea* element of a general intent crime. *See United States v. Willis*, No. 97-4091, 1999 WL 591440 (6th

Cir. Jul. 29, 1999). The *Willis* court specifically noted that "by eliminating the 'volitional' prong of the insanity defense, Congress meant to preclude only the use of 'non-insanity' psychiatric evidence that points toward 'exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection.'" *Id*. at *6. Here, Defendant sought to introduce expert psychological testimony that her PTSD caused her to "filter" memories and interpret questions on the naturalization application inquiring about criminal history to refer to criminal history in the United States only. This is precisely the type of psychiatric evidence Congress sought to preclude as explained by the *Willis* court. These purported claims of error are without basis in law.

Because Defendant's PTSD defense was irrelevant and inadmissible pursuant to well-settled law, the Court likewise did not err in excluding her claims of torture. Here again, Defendant re-raises the same arguments already considered and rejected by this Court without presenting any new arguments. She similarly fails to cite any authority for her claim that this evidence should have been permitted at her trial. As this Court previously found, the issue for the jury was whether the Defendant knowingly made a false statement by answering "no" to the naturalization application's question, "[h]ave you EVER been convicted of a crime or offense?" As such, the mere fact of Defendant's conviction was relevant, and not whether that

conviction was obtained by purported torture or without due process of law. This argument provides no basis for a new trial.

Defendant next argues that the Court erred in admitting the documents received pursuant to the Mutual Legal Assistance Treaty. Defendant again fails to add any new arguments to this issue nor does she direct the Court's attention to any authority demonstrating this Court improperly admitted the documents, which were authenticated pursuant to the terms of the treaty. Defendant is not entitled to a new trial based on the admission of the documents produced pursuant to the Mutual Legal Assistance Treaty.

Defendant's argument concerning redaction of the documents produced pursuant to the Mutual Legal Assistance Treaty fares no better. Defendant wrongly asserts that her conviction for the bombing of a grocery store that resulted in the death of two civilians is irrelevant to the charge in the Indictment. The nature of the crime for which Defendant was convicted in Jerusalem is relevant to two elements: materiality and procurement. Defendant again overlooks the fact that a minor conviction such as loitering, unlike her 1969 conviction, would not impact her ability to establish good moral character, nor would it call into question whether she obtained her permanent resident status lawfully. Thus, Defendant's 1969 conviction was directly relevant to the elements of unlawful procurement of naturalization.

Defendant also raises no meritorious argument by suggesting that the 1967 Indictment should have been redacted to exclude mention of the crime for which she was convicted. Defendant again ignores the fact that the specific crime for which she was convicted was directly relevant to materiality and procurement. The 1967 Indictment was the only exhibit which demonstrated that Defendant was charged with criminal offenses. Moreover, one of the specific questions on her naturalization application asked if she had ever been charged with a crime. This evidence was directly relevant and it was not outweighed by unfair prejudice. The Court notes that it did order the redaction of portions of the 1967 Indictment that were irrelevant to the charge of unlawful procurement of naturalization.

Defendant next asserts that the Court erred in failing to ask certain questions during the voir dire process. Specifically, Defendant claims the Court erred by not asking any questions about the conflict between Palestine and Israel. She also claims the Court erred by not asking the jurors if they had any biases or prejudice against the Defendant because English is not her first language and she required the assistance of an interpreter. These purported errors do not demonstrate a new trial is warranted.

Defendant ignores the fact that this Court asked the jurors if they had any possible prejudice towards Muslims and Palestinians. The Court asked if any of the prospective jurors had friends who practiced the Muslim faith or friends of Palestinian

descent. The Court inquired if any of the jurors believed Muslims or Palestinians were more likely to lie than persons of other faiths or nationalities. Lastly, the Court also inquired whether any of the prospective jurors had close friends or family members who are immigrants or if they had a close relationship with anyone who is a naturalized citizen.

The Court asked all of Defendant's proposed voir dire questions that were directly relevant to the issues in the case and that allowed the empaneling of an impartial jury. It is well-settled that "[j]udges need not use every question submitted by counsel; they need only use those to which an anticipated response would afford the basis for a challenge for cause." *United States v. Fish*, 928 F.2d 185, 186 (6th Cir. 1991).

Defendant has failed to explain how she was deprived of an impartial jury under the Sixth Amendment, much less provide any case law in support of her position. There was simply no reason to delve into the jurors perceptions of the Israeli-Palestinian conflict, which was irrelevant to the elements of the charged offense. Nor was it necessary to inquire about the fact that English is not Defendant's first language when the Court had inquired as to potential prejudices against Muslims and Palestinians. Morever, Defendant rarely relied on her interpreter throughout the witnesses' testimony, as well as during her own testimony. The interests of justice do

not require a new trial based on the voir dire examination.

Lastly, Defendant complains that the Court erred in partially sequestering the jury by having the jurors assemble at an off-site location and be transported by the United States Marshal's Service in vans with blackened windows. The Court gave a special instruction, which was prepared and approved by both parties, that provided the jurors with a neutral explanation for the partial sequestration, specifically to avoid unwanted media attention. Without any factual or legal support, Defendant claims this explanation was "transparently false" and "implicitly suggested to the jurors that their safety might be in danger." Defendant cannot make such skeletal arguments and overcome the presumption that juries follow such instructions. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985); *see also Lanz v. Gundy*, 399 F. App'x 969, 974 (6th Cir. Oct. 14, 2010) (noting the existence of an "almost invariable assumption of the law that jurors follow their instructions.").

Based on the foregoing, Defendant has failed to demonstrate the interests of justice require a new trial.

### B. Defendant's Motion for Judgment Notwithstanding the Verdict

Defendant also moves for judgment notwithstanding the verdict arguing the evidence was insufficient to establish she was guilty of unlawful procurement of naturalization contrary to 18 U.S.C. § 1425(a). Contrary to Defendant's argument, the

evidence was more than sufficient to support the jury's verdict.

In reviewing the sufficiency of the evidence, the Court may set aside a jury's verdict "only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 3 (2011). "[E]vidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 6 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis in original)); *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006). As such, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012). "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.'" *United States v. Vannerson*, 786 F.2d 221, 225 (1986). When considering sufficiency of the evidence claims, the Court does not "weigh the evidence, assess the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Conaster*, 514 F.3d 508, 518 (6th Cir. 2008).

Unlawful procurement of citizenship under § 1425(a) has five elements:

1. The defendant is a naturalized United States citizen;
2. The defendant made a false statement in her naturalization application, during her naturalization interview, or both.
3. The defendant made the false statement knowingly.
4. The false statement was material; and
5. Defendant procured her naturalization contrary to

law.

In her motion, Defendant only challenges the sufficiency of the evidence with respect to the third element, or the *mens rea* element. She argues that the Government failed to prove beyond a reasonable doubt that she knew the questions on the naturalization application were not limited to arrests, charges, convictions and imprisonment in the United States.

At trial, Jennifer Williams, the Immigration and Citizenship Services Officer ("USCIS") who interviewed Defendant, testified that when she asked questions of an applicant relating to criminal history, she always added the words "anywhere in the world," as she was trained to do. Viewing this evidence in the light most favorable to the Government, Ms. Williams' testimony is sufficient to establish that Defendant understood she answered the question about her criminal history falsely when she answered "no" to the question "[h]ave you EVER been convicted of a crime or offense?" as well as provided a false statement during her interview.

Defendant is asking the Court to substitute a different credibility determination than that found by the jury by arguing the jury should have believed her testimony that she understood the question only pertained to criminal conduct in the United States. The jury clearly did not believe Defendant's explanation nor did they believe her testimony that Ms. Williams never asked her whether she had ever been convicted of

a crime "anywhere in the world?"

It is of course beyond dispute that it is within the jury's province to consider this conflicting evidence and reject Defendant's testimony. *Phillips v. Parke*, No. 93-5036, 1993 U.S. App. LEXIS 17666, *4 (6th Cir. Jul. 6, 1993) ("Faced with this conflicting evidence, the jury was clearly entitled to reject [the defendant's] testimony which formed the basis of his self-defense theory, and to credit the prosecution's evidence, which contradicted such defense."). "It is the province of the factfinder [] to weigh the probative value of the evidence and resolve any conflicts in testimony." *Id*. (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992); *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985)).

The other elements of unlawful procurement of citizenship were also adequately proven. There is no dispute that Defendant was a naturalized citizen. There is also no dispute that the answers on her naturalization application and during her interview were false because she had been arrested, charged, convicted and imprisoned in Israel. The false answers and statements were material and led to Defendant procuring citizenship contrary to law. Specifically, the evidence introduced via the testimony of Douglas Pierce, Section Chief for the USCIS, established that Defendant's convictions for multiple bombings, one of which killed two civilians, rendered her ineligible for United States citizenship under the immigration laws. The evidence also

demonstrated that had she truthfully disclosed her criminal history, her application for citizenship would have been denied.

Defendant's motion is therefore without merit; there was sufficient evidence to support her conviction for unlawful procurement of naturalization.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for New Trial [#142] is DENIED. Defendant's Motion for Judgment Notwithstanding the Verdict [#143] is DENIED.

SO ORDERED.

Dated: February 13, 2015  /s/Gershwin A Drain
GERSHWIN A. DRAIN
United States District Judge