UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RASMIEH YUSEF ODEH,

    Defendant.

Case No. 13-20772
Hon. Gershwin Drain

## DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S DEMAND FOR A MENTAL EXAMINATION

**INTRODUCTION**

Now comes defendant Rasmea Odeh, by her undersigned counsel, and respectfully but strongly opposes the government's request for a mental examination under Rule 12.2(c) of the Federal Rules of Criminal Procedure, particularly where the stated purpose is to generate evidence for use in its arguments against the admission of testimony from Ms. Odeh's expert psychological witness, under Rule 702 of the Federal Rules of Evidence and the *Daubert* rule. Such personal information from a defendant for a *Daubert* determination would be wholly improper, and potentially be highly prejudicial, and would violate a defendant's Fifth Amendment rights. It is not authorized by the

1

very explicit provisions of the rule, and no authority is given, or can be found in any form, for the introduction or consideration of such information in the forthcoming *Daubert* determination in this case.

On the face of it, information about an individual defendant like Ms. Odeh, which might be gained from a Rule 12.2(c) examination of her present mental state and PTSD condition, is flatly irrelevant to the issues raised by a *Daubert* challenge to her expert, who gave her the diagnosis, and would testify as part of defendant's explanation of her state of mind at the time of the offense. The issue on the *Daubert* motion concerns the expert and her expertise, and the reliability of what she knows and what she says about PTSD, and torture, and about defendant's case.

Defendant here also has strong and cogent reasons why no mental examination <u>at all</u> should be ordered in this case, chief among them being the grave risk that such a fundamentally adversarial interrogation – obviously designed to debunk her earnest PTSD defense – would gravely threaten a serious aggravation of her symptoms and the suffering they cause her. The possibility of such harm must be balanced against the very limited usefulness of such information, particularly where, as in this case, ample other materials are available to the government to challenge Ms. Odeh's defense at trial.

As a threshold matter, defendant submits that the request for a mental examination is altogether premature, at odds with the applicable Federal Rules, and should only be considered, if at all, <u>after</u> this Court has ruled that the testimony of defendant's expert can be admitted and, accordingly, ordered a new trial.

In support of her opposition to the government's motion based on the aforementioned points, Ms. Odeh asserts the following:

## BACKGROUND

Relying on Rule 12.2(c)(1)(B) of the Federal Rules of Criminal Procedure, the government is seeking a two- to three-day mental examination of Ms. Odeh, which it claims it needs not simply for trial, but to challenge the admissibility of the expert testimony of Dr. Mary Fabri in the upcoming *"Daubert"* hearing. The government represents that, if this Court finds Dr. Fabri's testimony admissible, it will then use the results of the examination to attack defendant's PTSD claim at trial. But the gravamen of the government's instant demand is that the exam is needed for its *Daubert* challenge; however, their argument is not authorized under Rule 12.2 and must be rejected.

In *Daubert v. Merrill Dow Pharmaceuticals,* 509 U.S. 57 (1993), the U.S. Supreme Court affirmed and expounded upon the 'gatekeeper' test for the admissibility of expert evidence in a trial, as embodied in Rule 702 of the Federal

Rules of Evidence, and also changed it, which is why the *Daubert* issue has become part of the test for the admission of expert testimony at trial. In *Daubert*, the Court held there was no need to show that the theory or method involved in proffered evidence was "generally accepted," only that it was scientifically reliale, and had been properly applied. As the *Daubert* Court stated, "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity – and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, supra, 509 U.S. at 595-96 (emphasis added).

A government conducted mental examination of the defendant will not provide the government with information pertinent to the expert's qualifications, or the reliability of her methods and her opinion. A mental exam of the defendant will not produce relevant information to assist the court in that determination. The language of Rule 702 does not contemplate a mental exam of the defendant before the trial court can rule on the admissibility of expert testimony,

Rule 12.2(c)(1)(B) provides that, if the defendant gives notice under Rule 12.2(b), a court "*may*, upon the government's motion, order the defendant to be examined under procedures ordered by the court" (emphasis added), for use by the government in attempting to rebut the defense expert's testimony at trial. The Rule,

4

as amended in 2002, is carefully drawn, and its discretionary authority is carefully circumscribed. It plainly does not authorize the use of a mental examination for the purposes of challenging the admissibility of an expert witness's testimony. The government cites no case that allows for such an expansion of the limited purposes of Rule12.2(c).

Where the Court has yet to rule on the admissibility of Dr. Fabri's testimony at trial, the government's motion is premature at best, and at least at this time, must be denied. Indeed, it would make no sense for the Court to attempt to decide whether or not to order such an invasive mental examinationb before it has ruled that her expert's testimony is admissible and that a new trial will take place. At the proper time, the Court, exercising its discretionary authority, and being much better informed about the science of PTSD via the *Daubert* hearing, will have to weigh the need for such an examination against the constitutional interests of the defendant, including her right not to be traumatized again by an adversarial interrogation.

## ARGUMENT

I. **There is No Authority for this Court to Afford the Government a Mental Examination of Defendant Simply for Use in Bolstering its Arguments Opposing the Admission of Expert Testimony on her Behalf.**

Rule 12.2 (c)(1)(B) provides the court with the discretionary authority to order a mental examination by a government 'expert', <u>after</u> the defense has given notice under 12.2(b) of its intent to introduce expert psychological testimony, at trial, relating to the defendant's mental condition at the time of the offense. The purpose of this rule is to allow the government, under properly qualifying circumstances, to conduct a mental examination of a defendant for use in meeting the opinion(s) of the defense expert at trial.

Here the government seeks instead to use the fruits of a mental examination to oppose the admissibility of defendant's expert's testimony in the first instance, in a pre-trial challenge under the *Daubert* decision. As noted, the government cites no authority for their appropriation of a Rule12.2(c) mental examination for use in a *Daubert* inquiry, which involves a decision on whether the defense expert's testimony will be admitted at all, and consequently whether a mental examination will be needed at all.

Every case cited by the government concerns a mental examination ordered <u>after</u> a ruling admitting the expert's testimony. In order to avoid infringing upon a

6

defendant's right against self-incrimination when requiring her to submit to a mental exam, Rule 12.2(c)(4) specifically provides that, "No statement made by a defendant in the course of any examination conducted under this rule, no testimony by the expert based on the statement, and no fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant (A) *has introduced expert evidence* . . . requiring notice under 12.2 (b)(1)," (Emphasis added).

By the plain language of the statute then, no statement obtained from a defendant in the course of an examination, and/or any fruits thereof, may be used *until* the defendant "has introduced" expert evidence regarding his or her mental condition. In the defendant's view it seems clear that, in keeping with this stricture, and respect for her fundamental Fifth Amendment rights, a defendant cannot be required to testify in the context of a government-conducted mental examination, until the Court has ruled that her expert evidence will be allowed, and then---since it is a matter for the Court's discretion---only upon a reasonable and adequate showing of need. The statute absolutely does <u>not</u> state that a defendant's statements may be used to challenge the very introduction of her expert evidence. Rather, it says that once the defendant has in fact introduced such evidence, then and only then may the government use statements obtained from the defendant in the course of a court-ordered mental exam. The Notes of the Advisory Committee

7

on Rule 12.2, and case law, make clear that a defendant's right against self-incrimination is only waived when, i.e., <u>after</u>, she has introduced expert testimony, in the trial, on her mental condition at the time of the offense. *See* Fed. R. Crim. P. 12.2, Advisory Committee's Notes on 2002 Amendments; See also, *Powell v. Texas*, 492 U.S. 680, 683-84 (1989); <u>United States v. Troya</u>, 733 F.3d 1125, 1138 (11th Cir. 2013), *cert denied, sub nom. Sanchez v. U.S.*, 135 S. Ct. 2048 (2015).

Accordingly, the derivative use of any information obtained from a court-ordered mental examination of a defendant for purposes other than rebutting defendant's expert at trial seems clearly prohibited. Indeed, to allow the fruits of a coerced government mental examination to be used to challenge the admissibility of the defense expert's testimony would be a clear violation of the explicit limits of Rule 12.2 and its built-in protections, and a violation of Ms. Odeh's Fifth Amendment rights.

The government argues that this Court "cannot make an informed decision about the reliability and competence of the defense expert's conclusions upon the expert's word alone." (G. Mot. at 4). Nothing says it has to. The government will surely bring in expert opinion of its own at the *Daubert* hearing, and there is extensive evidence in the record that they can use, allowing for an ample adversarial process in which this Court can make an informed decision. Included

in such evidence is the earlier testimony of Dr. Fabri that the Court heard, with cross-examination by the government, at the earlier Rule 104 hearing; a long affidavit by Dr. Fabri detailing Ms. Odeh's history and the psychological testing; as well as all the records of testing that was performed in the course of Dr. Fabri arriving at her diagnosis. Nothing precludes the government and its experts from using any and all of this evidence to argue that Dr. Fabri's is not a competent expert, or that her diagnosis and opinions are not reliable.[1]

> To repeat it, the Supreme Court said in the *Daubert* decision that,
>
>> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity---and thus the evidentiary relevance and reliability ---of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."
>
> *Daubert*, supra, 509 U.S. at 595-6 (emphasis added).

This Court might know that a fellow judge of this District, the Hon. Gerald E. Rosen, wrote a seminal decision over twenty years ago on the admissibility of evidence about PTSD, and repressed memory theory, wherein he laid out the

---

1. It should be noted that the Sixth Circuit has already concluded that expert PTSD testimony would be "relevant" to Ms. Odeh's claim that she did not knowingly lie when she answered her naturalization questions. *United States v. Odeh*, 815 F.3d 968, 977 (6th Cir. 2016).

9

requirements for admission of such proposed expert testimony. He explained that the foundational threshold requires that the expert be "qualified by virtue of his/her training and education, [and] also that he/she ha[ve] personal experience in treating people who have experienced post-traumatic stress disorder, traumatic amnesia and repressed memory." *Isley v. Capuchin Province*, 877 F. Supp. 1055, 1064 (E.D. Mich. 1995). Clearly, Dr. Fabri, who has over 20 years of experience treating torture victims who suffer from PTSD, qualifies without question, and a government examination of Ms. Odeh would not affect that showing in any way.

Judge Rosen further stated:

> Thus, in the context of the court's role as 'gatekeeper' of expert testimony in this case, the Court must assure that there is a solid foundation for the proposed expert witness's testimony, by virtue of her education, her training, her readings, her teachings and her work experience, so as to give the court confidence that the witness is competent to provide specialized knowledge and assistance to the jury. Secondly, the witness must be able to persuade the court that she has sufficient background and training specifically related to her theory to be able to testify as to the theory's validity and reliability, and then to be able to establish that the theory, itself, does have some degree of validity and reliability.

*Id.* at 1066. And he found that it did, and admitted the expert testimony.

At the time, the Supreme Court had already concluded in *Daubert* that, "'General acceptance' is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of

10

Evidence---especially Rule 702---do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. *Pertinent evidence* based on scientifically valid principles will satisfy those demands." 509 U.S. at p. 597 (Emphasis added) Defendant submits there is no 'pertinent evidence' to be gleaned from a present-time mental exam of a defendant regarding whether the expert's proffered testimony "rests on a reliable foundation and is relevant to the task at hand." *Id*.

Indeed, none of the issues asserted by the government are implicated in the *Daubert* inquiry or properly within its scope. Whether this defendant suffered from PTSD at the time of the offense? Whether the defendant is malingering? and Whether the PTSD manifested, as Dr. Fabri opined? (G. Mot. at p.3) are outside the scope of Rule 702. Certainly, in particular, the accusation of malingering, like lying itself, is a question only the jury can decide; and, whether the defendant suffered from PTSD at the time of her alleged offense, and thus, whether she knowingly lied on her naturalization form, is also clearly a question for the jury only.

What the government is seeking to do here---use the results of a mental examination in order to finesse a pre-trial judicial determination of defendant's mental status at the time of the crime---is entirely improper and the attempt must

be rejected. A mental examination of Ms. Odeh by the government will not assist this Court in determining whether or not the testimony of Dr. Fabri will satisfy the *Daubert* criterion, - that is elementary. Therefore, the government's request to examine Ms. Odeh for the purposes of a *Daubert* inquiry is inappropriate and should be denied.

## II. The Demand for a Mental Examination for Rebuttal of Defendant's Expert at Trial is Premature, Unfounded, and Highly Prejudicial, and Should be Denied in any Case.

This Court has not yet ruled on the admissibility of Dr. Fabri's testimony at Ms. Odeh's trial. If it were to rule against admissibility, there would be no re-trial and the need for an examination of Ms. Odeh would be moot. While the defense is confident that the Court will allow the testimony, the issue of a mental examination must await the ruling on admissibility. A hearing on the motion is scheduled for November 29, 2016.

Assuming the Court rules in favor of admission of defendant's expert evidence, there will be serious additional considerations to be addressed in deciding whether or not to allow a mental examination, and if so, the fair and reasonable, proper length and nature of such an examination.

At the outset it is important to recognize that the Court "must" allow a mental exam only if a defendant raises an insanity defense, it "may" order an

examination if no insanity claim is raised, but is not required to do so. F. R. Crim. P. 12.2(c)(1)(B). In *United States v. Davis,* the Sixth Circuit provided a long and thoroughly reasoned analysis of why, in the absence of an insanity claim, Rule 12.2 did not necessarily give the district court authority to order a defendant to submit to a mental examination by a government expert. See *United States v. Davis*, 93 F.3d 1286, 1290-95 (6th Cir. 1996). In the Circuit Court's view at the time, "[T]he introduction of expert testimony regarding a mental disease or defect does not particularly suggest the need for an examination of the defendant, let alone require it." *Davis,* 93 F.3d at 1293. While Rule 12.2 was later amended, to provide Fifth Amendment protection so that a district court could order a defendant to submit to a mental examination in a given case without undue prejudice, the reasoning of the *Davis* Court as to why such an examination may well be unnecessary is still relevant.

Specifically, the Court in *Davis* pointed out that "the government can prepare to meet expert defense evidence in a variety of ways, including the retention of a government witness to attend at trial and assist the government in cross-examination, and review of evidence relied upon by the defense expert." *Davis,* 93 F.3d at 1294; *see also United States v. Akers*, 945 F. Supp. 1442 (D. Colo. 1996). As stated above, there is extensive information already available to the government and their experts to prepare for any rebuttal of defense expert

testimony at trial. Therefore, given the myriad ways the government will be able to confront and rebut the defense expert, defendant submits that it will be unnecessary---as well as potentially very harmful, and prejudicial---to subject her even to two or three <u>hours</u> of examination/interrogation by an antagonistic government agent, let alone two or three days.

As this Court is aware, Ms. Odeh was subjected to many days of horrific torture in Israel, in 1969, including electro shock and sexual assault by Israeli government agents; and the profound trauma the torture caused remains at the root of the stress syndrome she still suffers profoundly from, by way of PTSD, 47 years later. There can be little doubt that a hostile interrogation of any significant length, by an agent bent on extracting responses he can use to discredit her and her claims, will plunge the defendant to the depths of ghastly 'flashback' memories which have afflicted her life for all these years, and very possibly aggravate the injury as she experiences it now. Such a great detriment to the defendant---particularly where such a potentially devastating experience of it could well compromise her ability to speak strongly and plainly in her own defense in the trial---clearly will require a strong and clear, articulable material interest on the government's part, in the purportedly anticipated exam information, to offset it.

And there is none. The government simply does not need a mental examination, and they cannot legitimately show any significant usefulness in the

14

testimony at trial. Therefore, given the myriad ways the government will be able to confront and rebut the defense expert, defendant submits that it will be unnecessary---as well as potentially very harmful, and prejudicial---to subject her even to two or three <u>hours</u> of examination/interrogation by an antagonistic government agent, let alone two or three days.

As this Court is aware, Ms. Odeh was subjected to many days of horrific torture in Israel, in 1969, including electro shock and sexual assault by Israeli government agents; and the profound trauma the torture caused remains at the root of the stress syndrome she still suffers profoundly from, by way of PTSD, 47 years later. There can be little doubt that a hostile interrogation of any significant length, by an agent bent on extracting responses he can use to discredit her and her claims, will plunge the defendant to the depths of ghastly 'flashback' memories which have afflicted her life for all these years, and very possibly aggravate the injury as she experiences it now. Such a great detriment to the defendant---particularly where such a potentially devastating experience of it could well compromise her ability to speak strongly and plainly in her own defense in the trial---clearly will require a strong and clear, articulable material interest on the government's part, in the purportedly anticipated exam information, to offset it.

And there is none. The government simply does not need a mental examination, and they cannot legitimately show any significant usefulness in the

testimony at trial. Therefore, given the myriad ways the government will be able to confront and rebut the defense expert, defendant submits that it will be unnecessary---as well as potentially very harmful, and prejudicial---to subject her even to two or three <u>hours</u> of examination/interrogation by an antagonistic government agent, let alone two or three days.

As this Court is aware, Ms. Odeh was subjected to many days of horrific torture in Israel, in 1969, including electro shock and sexual assault by Israeli government agents; and the profound trauma the torture caused remains at the root of the stress syndrome she still suffers profoundly from, by way of PTSD, 47 years later. There can be little doubt that a hostile interrogation of any significant length, by an agent bent on extracting responses he can use to discredit her and her claims, will plunge the defendant to the depths of ghastly 'flashback' memories which have afflicted her life for all these years, and very possibly aggravate the injury as she experiences it now. Such a great detriment to the defendant---particularly where such a potentially devastating experience of it could well compromise her ability to speak strongly and plainly in her own defense in the trial---clearly will require a strong and clear, articulable material interest on the government's part, in the purportedly anticipated exam information, to offset it.

And there is none. The government simply does not need a mental examination, and they cannot legitimately show any significant usefulness in the

reasonably possible fruits of one. They have in hand more than enough information to be fully able to confront defendant and her expert at trial and cross examine them on their issues: Does she have PTSD? Is she malingering? Did she have a PTSD defense mechanism, or 'filter', which kept her, protected her, from "knowing". Her mental state at the present---refracted through her defenses and protections against the government interrogator, whose interest is not to patiently and supportively diagnose the defendant's PTSD condition, but to look for ways to use such examination to challenge and discredit the defendant is not the kind of examination designed to elicit credible information.

There is no reason that pointed cross-examination based on all the prior records and testimony of the defendant and her expert will not be more than sufficient for the explication of their challenges to the defendant's claims. The potential harm to Ms. Odeh from such an intrusive examination, on the other hand, which will force her to relive unspeakable torture she endured, in a hostile environment where the torturers would likely be re-figured more than a little in the latter-day interrogator, far outweighs the minimal usefulness an exam could have for the government, in the balance the Court must strike.

The question does indeed come down to a balance, such as contemplated in Rule 403 F.R.E.: the probative value of the (still unspecified) exam evidence, versus the prejudice---and here, highly likely potential injury---to the opposing

15

party, defendant, of allowing it to be extracted from her. If the government cannot show an explicit need for mental examination of the defendant---under close questioning regarding specific anticipated responses and their supposed evidentiary value---the 12.2(c) request must be denied.

If some need is made out, the Court must still take all possible steps, and impose all indicated restrictions, needed to minimize the harmful and prejudicial effects of government interrogation. Above all, the Court is entreated by the undersigned to drastically limit the time period allowed for any purported exam under Rule 12.2(c).

Once the question of ordering a mental exam of defendant for use in rebuttal of the defense expert's testimony at trial becomes ripe for a ruling, this Court, weighing all the factors, should deny the government's request.

**CONCLUSION**

Boldly, and it must be said, querulously, the government has demanded that the Court order the defendant to submit to a mental exam---which, for this PTSD victim/patient they wish to extend outlandishly for up to three days---for their use in the currently pending R.104 hearing, where they seek to bar the testimony of defendant's expert witness, Dr. Mary Fabri, about defendant's PTSD, from the trial.

16

Such an Order is not merely outside the Court's authority under the Rule, it seeks to inject improper material into the admissibility decision. In clear point of fact, and the explicit terms of the rules discussed above, there is 'no earthly way' the fruits of a mental exam under 12.2(c), can be made part of *Daubert* determination, and no legal way to order an exam until that determination is made. Thus the government's demand lacks a lawful basis and must be denied on the grounds it advances; and it should be denied altogether, because the great prejudice and danger of harm an exam would entail clearly outweighs any benefit the government can hope to gain.

**Wherefore**, Ms. Odeh respectfully asks that the government's motion for a mental examination be denied; in the alternative, if after the *Daubert* determination an exam is deemed appropriate, defendant asks the Court to set strict limitations on the time and content, and to require close supervision of the government's interrogation; and that it grant such other and further relief as is just and appropriate in the premises.

Respectfully submitted,

Dated: July 21, 2016

/s/ Michael E. Deutsch
Michael E Deutsch
1180 N. Milwaukee Ave.
Chicago, Ill. 60642 773-235-0070

Michael E. Deutsch

Dennis Cunningham
James R. Fennerty
William Goodman/Huwaida Arraf
Attorneys for the Defendant

## CERTIFICATE OF SERVICE

Michael E. Deutsch, hereby certifies that he has filed the above motion to the parties of record through the ECF system on July 21, 2016

/s/ Michael E. Deutsch