UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,	CRIMINAL NO. 13-20772

    Plaintiff,	HONORABLE GERSHWIN A. DRAIN

v.

RASMIEH YOUSEF ODEH,

    Defendant.
_____/

**GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION
TO GOVERNMENT'S MOTION FOR MENTAL EXAMINATION
OF DEFENDANT**

The United States, by and through its undersigned attorneys, submits this reply to Defendant's Opposition to the Government's Motion for Mental Examination of Defendant. The defendant's opposition to the government's request for a mental examination of the defendant is based on a mischaracterization of Federal Rule of Criminal Procedure 12.2, a misunderstanding of the extent of her Fifth Amendment rights, a misreading of applicable case law, and an exaggeration of the alleged harmful effects that a mental examination will have on the defendant – an exaggeration that is particularly disingenuous given that the defendant was able to be examined by her own expert for a period of 18 hours during the course of six sessions spanning a period of four months.

ARGUMENT

I.    <u>Fairness Requires that the Defendant be Examined by a Government Expert</u>

The defendant contends that she should not be examined by a government expert under any circumstances because any examination would "plunge" her into "the depths of ghastly 'flashback' memories" of her alleged torture. (R. 203: Def. Opposition, PgID 2752). The defendant's contention is undermined by the fact that it presupposes the existence of her PTSD – which is what the government wishes to examine. It is also undermined by the fact that the defendant is able to discuss her acts of terrorism and alleged torture in the media and elsewhere when it suits her. (R. 161: Government's Sentencing Memorandum, PgID 1721-26). Moreover, the defendant was able to be examined by her own psychologist over six sessions, which were spread over a four month time period and totaled 18 hours in length. (R. 113: Evidentiary Hearing, Testimony of Mary Fabri, PgID 1163). The government's motion seeks a comparable examination – one lasting two to three days.[1] The fact that the defendant was able to sit for an examination by her own expert that was roughly the same duration as the examination requested by the government shows that her claims about plunging into the depths of ghastly flashback memories is, at best, a gross exaggeration.

---

[1] The examination would also be non-custodial and would take place at the U.S. Attorney's Office in Chicago, thereby obviating the need for the defendant to travel.

The defendant also exaggerates the nature of the government's examination by claiming that it will amount to a "hostile interrogation" by an "agent bent on extracting responses he can use to discredit her." (R. 203: Def. Opposition, PgID 2752). In reality, the government's examiner is a retired Bureau of Prisons forensic examiner who has conducted numerous psychological evaluations on behalf of this Court and many other federal courts.

The defendant claims that the government should not be permitted to conduct a mental examination of her because cross-examination of her own expert would be "more than sufficient" to challenge her claim that PTSD made her ignore certain portions of certain questions on her naturalization application (despite the fact that those portions were in all capital letters and bolded). (R. 203: Def. Opposition, PgID 2753). The defendant's argument, however, is contradicted by controlling case law. According to the Supreme Court, "[w]hen a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert *who has also examined him.*" *Kansas v. Cheever*, 134 S.Ct. 596, 601 (2013) (emphasis added). This is because, "[o]rdinarily the only effective rebuttal of psychiatric opinion testimony is contradictory opinion testimony; and for that purpose ... the basic tool of psychiatric study remains the personal interview, which requires rapport between

the interviewer and the subject." *Id.* at 602 (citing and quoting *United States v. Byers,* 740 F.2d 1104, 1113 (D.C. Cir. 1984) (rejecting the argument that "availability of cross-examination of the defendant's experts is sufficient to provide the necessary balance is the criminal process")).

This is especially true when – as is the case here – the opinion of the defendant's expert is "based solely on" what the expert was "told by the defendant." *United States v. McSherry*, 226 F.3d 153, 157 (2d Cir. 2000) (affirming district court's order for a mental examination of the defendant by a government expert where defendant gave notice of intent to introduce mental health evidence). It is a matter of "fundamental fairness" that if a defense expert "arrived at their diagnoses after prolonged examinations of the defendant," that the government be afforded "no more than rough parity in terms of access to the information that would allow the government's experts to arrive at competing conclusions." *Id.* In this case, the only source of information for the defense expert's opinion is the interviews she conducted with the defendant. The government's expert should have equal access to that same source of information.

The only case relied by the defendant to support her position is *United States v. Davis*, 93 F.3d 1286 (6th Cir. 1996). However, *Davis* does not apply to this case for three reasons. First, *Davis* involved the question of whether a district court had the authority under Federal Rules of Criminal Procedure 12.2 (as it existed at that

time) to order a *custodial* examination of a defendant who was on pre-trial release. *Davis* did not hold that a district court lacked the authority to order a non-custodial examination – which is the type of examination the government seeks here. In fact, the Sixth Circuit has since stated that a "district court is authorized to order a reasonable, non-custodial psychological examination" when a defendant raises a defense regarding mental capacity. *United States v. McMahan*, 129 F. App'x 924, 930 (6th Cir. 2005) ("government was entitled to a psychological examination" of the defendant because "the government was entitled to rebut" defendant's defense related to his mental state). Second, the court of appeals in *Davis* was wrestling with the meaning of Federal Rule of Criminal Procedure 12.2, as it existed at that time. Rule 12.2 was later amended to make clear that district courts had the authority to order psychological examinations when a defendant provides notice of his or her intent to offer mental health evidence on the issue of guilt. *See* F.R.C.P. 12.2(c)(1)(B). Third, *Davis* has been superseded by the Supreme Court's decision in *Cheever*, which makes clear that relying on cross-examination is generally not sufficient for the government to rebut the testimony of a defendant's psychologist. 134 S.Ct. at 601.

II. The Defendant's Fifth Amendment Rights Are Not Applicable Because She Has Introduced Her Expert's Opinion Which is Based Entirely on the Defendant's Own Statements

The defendant asserts that an examination by the government would "violate a defendant's Fifth Amendment rights." (R. 203: Def. Opposition, PgID 2739). That argument has been squarely rejected by the Supreme Court and other courts. In *Cheever*, the Supreme Court held that a defendant does not have a Fifth Amendment right to preclude the government from introducing a psychological examination to rebut the defendant's contention that a mental defect prevented her from committing the crime. 134 S.Ct. at 601. "Any other rule would undermine the adversarial process," and would allow the defendant "through an expert operating as a proxy" to provide a "one-sided and potentially inaccurate view of his mental state at the time of the alleged crime." *Id.* The Supreme Court emphasized that this holding was in harmony "with the principle that when a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination." *Id.* The Supreme Court's holding reflected a consensus of lower court decisions. *See Byers,* 740 F.2d at 1111–13 (analyzing various decisions by numerous courts and concluding that a defendant cannot use the Fifth Amendment as a bar to deny the government "the opportunity to have its own corresponding and verifying examination, a step which perhaps is the most trustworthy means of attempting to meet" its burden of proof).

6

In this case, the defendant has filed a notice of her intent to introduce mental health evidence on the question of guilt, and has already introduced the testimony of her expert when she called Dr. Fabri to the witness stand on October 21, 2014. *See* (R. 42: Notice of Expert Evidence of a Mental Condition, PgID 295; R. 113: Evidentiary Hearing, Testimony of Mary Fabri, PgID 1163). Thus, the defendant has placed Dr. Fabri's opinions – which are based entirely on the defendant's own statements – directly at issue. The defendant cannot now shield herself, and her hired witness, from scrutiny by claiming a right to remain silent.

III.   Rule 12.2 Does Not Preclude An Examination of the Defendant Prior to a *Daubert* Hearing

The defendant claims that Federal Rule of Criminal Procedure 12.2 prevents the district court from ordering an examination of the defendant prior to a *Daubert* hearing. The defendant reaches this erroneous conclusion based on a misreading of Rule 12.2, namely that the government cannot use the results of a mental examination until after the defendant introduces the opinion of testimony of her own expert *at trial*. The defendant misreads and conflates two different sections of Rule 12.2. The portion of Rule 12.2 that deals with mental examinations (and is most relevant to the government's pending motion) says nothing about the timing of when the examination should take place. F.R.C.P. 12.2(c)(1). Rather, the rule "leaves to the court the determination of what procedures should be used for a court-ordered examination of the defendant mental condition (apart from

insanity)." F.R.C.P 12.2 (Advisory Committee Notes, 2002 Amendments). Of course, a pretrial examination of the defendant makes a great deal of practical sense. Waiting to conduct a mental examination until the defendant has introduced her own mental health evidence at trial would necessarily cause a delay in the proceedings – which is one of the primary problems Rule 12.2 was designed to address. *Id.* (Advisory Committee Notes, 1983 Amendments) (stating that there is "good reason" for Rule 12.2: "to permit adequate pretrial preparation, to prevent surprise at trial, and to avoid the necessity of delays during trial.").

Despite the fact that Rule 12.2 puts no temporal restrictions on the examination, the defendant argues that the Rule must be read to preclude the use of a mental examination until the defendant has introduced her own expert opinion testimony *at trial*. The defendant bases this argument on a different part of the rule, Rule 12.2(c)(4), which deals with Fifth Amendment issues. However, the defendant again misreads Rule 12.2(c)(4), which does not say that it applies only to trial. Rule 12.2(c)(4) states that a defendant's statements during a court-ordered mental examination cannot be admitted against the defendant in "any criminal proceeding" unless the defendant has "introduced" mental health evidence of her own. The word "trial" does not appear Rule 12.2(c)(4). Rather, the Rule applies to "any criminal proceeding" – which includes pretrial proceedings on evidentiary issues, such as a *Daubert* hearing. Moreover, the limitations of Rule 12.2(c)(4) are

8

lifted when the defendant "introduces" her own evidence. Again, the Rule does not say that this introduction of evidence must occur at trial. In the present case, the defendant has already "introduced" evidence of her mental state by calling Dr. Fabri to the witness stand at an earlier hearing. The defendant has therefore placed her own statements directly at issue. Rule 12.2(c)(4) and the Fifth Amendment do not shield her any longer.

IV. <u>An Expert's Conclusions Can Be Taken Into Consideration During a *Daubert* Hearing</u>

The defendant argues that this Court cannot take into consideration the conclusions of her expert witness in determining the admissibility of the expert's opinions. According to the defendant, the Court can only consider the expert's methodology. In *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997), the Supreme Court rejected this argument. Like the defendant here, the respondent in *Joiner* "point[ed] to *Daubert*'s language that the 'focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.'" *Id.* The respondent further argued that "because the District Court's disagreement was with the conclusion that the experts drew from the studies, the District Court committed legal error" in not permitting the expert to testify. *Id.* The Supreme Court disagreed and stated that "conclusions and methodology are not entirely distinct from one another." *Id.* The Supreme Court went on to explain that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

9

evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* Relying on *Joiner*, the Sixth Circuit has similarly rejected the notion that a district can only consider an expert's methodology when deciding on the admissibility of the expert's testimony. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001); *Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 529–30 (6th Cir. 2014) (Keith, J., dissenting) (collecting cases and stating "[s]everal cases have held that a judge is well within her discretion to exclude potential testimony which she believes does not fit the facts of the case and is contradicted by the available testimony."). The defendant cites no case to support her position other than the language in *Daubert* that was addressed by the Supreme Court in *Joiner*. There simply is no bar to this Court considering an expert's conclusions, as well as her methodology and qualifications, in determining whether to admit the expert's opinion testimony.

V.  Judge Rosen's Decision in *Isley v. Capuchin Province* Does Not Support the Defendant's Position

The defendant discusses at length Judge Rosen's opinion in *Isley v. Capuchin Province*, 877 F. Supp. 1055 (E.D. MI 1995). *Isely* was a civil case from the mid-1990s in which a former student brought suit seeking damages for sexual abuse by priests that was allegedly committed in the mid-1970s. As a civil case, *Isely* says nothing about whether this Court should order a mental examination in a

10

criminal case, which is the sole question at issue here. Moreover, the testimony at issue in *Isley* was not simply about Post-Traumatic Stress Disorder, but focused on whether the plaintiff suffered from "traumatic amnesia." The plaintiff's expert "testified that traumatic amnesia is a totally separate diagnosis from PTSD, and explained that traumatic amnesia is best defined as forgetting an event, having no idea or awareness that a traumatic event ever occurred." *Id.* at 1055.

In the present case, Dr. Fabri never diagnosed the defendant as suffering from traumatic amnesia, nor does Dr. Fabri claim that the defendant has no idea or awareness that her alleged torture ever occurred. In fact, such a diagnosis would contradict Dr. Fabri's claim that the defendant is aware of her alleged torture and was able to recall it and describe it to Dr. Fabri during their multiple sessions together. As a result, *Isely* has little precedential value for this case aside from the general statements of law about expert witness testimony. But even there, the opinion was written just two years after *Daubert* was decided, and well before most of the decisions discussed above, including *Cheever* and *Joiner.* And the law contained in *Isely* actually supports the government's position. For example, *Isely* relied heavily on a decision by the Supreme Court of New Mexico that dealt with whether PTSD evidence was admissible to prove that a victim had been sexually abused. *Id.* at 1062. In discussing whether to admit such evidence, the Supreme Court of New Mexico focused on the reliability of the proposed testimony, but

expressly acknowledged (as the Supreme Court would in *Joiner*), that reliability and conclusions are often two sides of the same coin:

> Although this may merely be a matter of semantics, reliability has been defined as a measure of bringing about *consistent results*, and validity is seen as proof of the technique's ability to show what it purports to show....We view validity and reliability as being scientifically interrelated, with the concept of validity encompassing the concept of reliability. In other words, if a particular scientific technique brings about *consistent results*, that is one element of validity, that is, proof of the technique's ability to show what it purports to show.

*Id.* (emphasis added).

In short, *Isely* was a civil case dealing with a completely different mental illness that was written without the benefit of subsequent case law. The portions of *Isely* that are actually pertinent to the present case support the government's position that an expert's conclusions can (and should) be considered in evaluating the reliability and admissibility of the expert's proposed testimony.

CONCLUSION

For the foregoing reasons, the government's motion for a mental examination of the defendant should be granted.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney

s/Jonathan Tukel
JONATHAN TUKEL
Chief, National Security Unit
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100

s/Cathleen M. Corken
CATHLEEN M. CORKEN
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100

s/Michael C. Martin
MICHAEL C. MARTIN
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100

Date: August 8, 2016

CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2016, I electronically filed or caused to be filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF filers.

                                                s/Michael C. Martin
                                                Assistant United States Attorney
                                                211 West Fort Street, Suite 2001
                                                Detroit, MI 48226
                                                (313) 226-9100

Dated: August 8, 2016