UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA            CRIMINAL NO. 13-20772

    Plaintiff,

                                              HON. GERSHWIN DRAIN

RASMIEH ODEH

    Defendant.
_____/

**MOTION FOR DISCLOSURE OF GOVERNMENT EXPERT AND FOR MODIFICATIONS OF COURT ORDER NEEDED TO PROTECT THE DEFENDANT FROM ADDITIONAL HARM**

Now comes defendant Rasmea Odeh, by her undersigned counsel, and, pursuant to the Court's Order of August 29, 2016, seeks a further Order requiring the government to disclose the identity, *curriculum vitae*, and all other relevant information concerning the expert it has retained to conduct a mental examination of the defendant, and to identify any formal tests or procedures that the designated individual intends to administer. The prosecutor has refused any such disclosure.

In addition, certain simple modifications of the Order are needed to provide, as much as possible, further protections which will at least minimize, if not remove, the distinctive threat of serious further mental and emotional harm to the Defendant from the examination the Court has approved. These would include

1

assurance of a neutral site for the exam, provision for defendant to have a companion with her to provide support at the points of crisis which are certain to arise, and, in particular, some clear explanation by the expert of how much time is needed for a complete examination.

Further, the Defense strongly protests the cynically dismissive, false assertion by the Government--- accepted whole cloth by the Court - that the Defendant has freely discussed her torture in the past, and thus is not at risk of 'retraumatization' or other, additional harm from such an examination. In fact, the statements cited in the Government's Reply referred to the bombing case against her in Israel, not her torture. While Ms. Odeh did give an interview shortly after her release from prison almost 40 year ago, she did not speak in detail about her torture, and not at all about the sexual assaults. Ms. Odeh has discussed the specific details of her torture, and specifically about the sexual assaults only with Dr. Fabri.

Dr. Fabri now advises the Court, in her attached Affidavit that the risk of Ms. Odeh suffering substantial further mental and emotional trauma from another examination---particularly from an adversarial figure, where the need for safety and trust will be fundamentally important---is very real.

Thus, even assuming the designated expert is properly qualified to deal both with PTSD and a female torture and sexual abuse victim, defendant urgently seeks

2

the additional protections outlined below, regarding the terms on which such an examination by the government expert may take place.

### The Danger of 'Retraumatization'

Dr. Fabri's states in her affidavit that, "it is an essential requirement to provide conditions that encourage safety and trust between the clinician and the trauma survivor. Setting, tone, and demeanor of the evaluator influence the evaluation process." (See Affidavit of Dr. Mary Fabri, attached as Exhibit #1 para 5). Dr. Fabri, one of the nation's most experienced experts on the treatment and diagnosis of victims of torture, goes on to state that "trauma specialists agree that effort must be taken to avoid the retraumatization[1] of survivors especially by professionals." (Fabri Aff. at para 7). As she states,

> "Ms. Odeh is vulnerable to the occurrence of retraumitization if a second evaluation is conducted. As a torture survivor, her personal reactions to an evaluator can affect the evaluation and thus its outcome. For example, Ms Odeh's torture included sexual assault and therefore, the sex of the evaluator is a concern. It can be retraumatizing if she has to describe details of her trauma to someone who is similar to the perpetrators. Additionally, recalling painful and distressing events and their details is retraumatizing and makes Ms. Odeh vulnerable to the reactivation of PTSD symptoms.

Fabri Aff. at para. 12

There can be no colorable claim that Ms. Odeh was not subjected to unspeakable torture. Dr. Fabri has submitted a detailed affidavit documenting in

---

[1] Dr. Fabri defines retraumatization "as traumatic stress reactions, responses and symptoms that occur after traumatic events and can be physical, psychological or both. It is the opening of emotional wounds or the anticipation of the rewounding." Fabri Aff at para 6

3

great specifics the physical and sexual torture that Ms. Odeh experienced at the hands of the Israeli secret police. In addition, the defense has submitted the grand jury testimony of one of the woman arrested with Ms. Odeh who observed her being subjected to electro-shock torture.[2] This Court has also previously found that Ms. Odeh's claims of torture were credible. Order of 10/27/14, Doc # 117, pp7, 18)

The Court asserts that defendant's claim that the examination will aggravate her symptoms is "belied by the numerous occasions that the Defendant has been able to discuss her history in Jerusalem in the media and elsewhere." (Ct. Order at 8) This is simply not accurate. Review of the materials cited in the Government's Reply---saying Ms. Odeh has discussed her torture "in the media and elsewhere," (See G Reply at 2), contains nothing at all about the details of the torture she endured. Dr. Fabri is the first and only one to whom Ms. Odeh has related the details of her prolonged torture including the sexual assaults. And, as Dr. Fabri states, there was a substantial period of trust-building before the examination could begin, and repeated emotional reactions by Ms. Odeh that required breaks and even suspension of one of the sessions.

---

[2] Grand Jury Testimony of Samya Qasem; "I saw her tortured. She was tortured in a room the size of this with electrical wires all around her." Bates # 000001617

4

**Expert Disclosures**

Based on the real potential of harm by a prolonged examination, especially by someone who has not treated victims of torture and is not experienced with PTSD, the defendant seeks the name of the government "expert" and his or her c.v., and disclosure of the testing s/he intends to administer, together with a clear explanation of how much time is necessary. The prosecutor, however, has not only refused to provide the name of the government expert, let alone his or her qualifications, and the testing he or she intends to perform, but bases her refusal on the outrageous claim that defense counsel will then foment harassment of the expert by the supporters of the defendant.

There is no basis for this gratuitous assertion, which is slanderous and unprincipled. No witness in this case has ever been improperly approached, and there is no justification for a secret witness in any event, especially an adversary who intends to spend hours interrogating the defendant. Such an inflammatory provocation by the government must be firmly rejected by the Court, and ought to be rebuked. The Court certainly has the authority to protect the expert from any harassment, imagined or otherwise, without limiting defense counsel from protecting the rights of their client.

5

In *United States v. O'Reilly*, 2010 U.S. Dist. LEXIS 14621 (E.D. Mich. 2010), the Court in ordering the mental examination of a defendant held that "The Government must provide defense counsel with at least five days' notice of the names(s) and professions of the Government expert(s) who will perform rebuttal examinations and the tests the expert(s) expect to perform." The court in *O'Reilly* also provided for a period in which objections on either side could be resolved either by the parties or the Court.

## II. Further Protections Are Also Needed.

Timely disclosure of the government expert's identity and qualifications is the first step needed to protect the Defendant from substantial and avoidable further harm from a new examination, which---even if conducted with full sympathy and care---will be fundamentally antagonistic and threatening. Thus the defendant also seeks, first, a neutral venue for the examination. The Court's order states that "the examination shall take place at the U.S. Attorney's Office in Chicago or *another suitable location near Defendant's home in Chicago*." (Emphasis added.) Rather than have the examination conducted in the offices of the government prosecutors---who seek, after all, to debunk and defeat Ms. Odeh's psychiatric defense, imprison her, and remove her from her adopted homeland and the life she has managed to build for herself---counsel for the defendant has

6


secured appropriate facilities at the DePaul School of Law, one block east of the U.S. Attorney's office, and we request that the Court specifically approve this.

Ms. Odeh also earnestly asks the Court to allow her to have a companion of her choosing, as a silent witness, who can provide emotional support, if necessary, and assist Ms. Odeh if she needs a break in the sessions

In addition, the Court's allowance for up to 18 hours of examination appears excessive, at least in the absence of a clear explanation from the expert of why so much time is needed for a redundant exam which ordinarily would take no more than a few hours over two sessions. Allowing up to 18 hours of examination, apparently based solely on an equivalency to the number of hours her expert reported that she spent with Ms. Odeh in meetings and diagnosis, is not justified at this point. To subject a torture victim to an undifferentiated 18 hours of excruciating examination/interrogation, simply because that equals the reported total time the defendant spent in the original, careful diagnostic process---without any preliminary showing of the necessity for such a prolonged examination---is arbitrary .

The first three hours Dr. Fabri spent with the defendant were devoted to background conversation, designed to develop relaxation and trust, as experienced experts working with victims of torture are trained to do. Here, at the very least,

the expert must be required to justify the time requirement---along with the rest of his or her intentions---and the Court must carefully control the time and quality of the procedures. Further, as Dr. Fabri also states, her sessions with Ms. Odeh "were marked by periodic breaks to allow Ms. Odeh to compose herself when tearfulness turned to sobbing or irritation became agitation." (Fabri Affidavit, para. 9) Dr. Fabri also describes one time when the session had to be ended after a discussion of her sexual torture. *Id.*

In this connection, it must be noted that the Court's Order relies upon cases which do not address the gravamen of defendant's claim, that a mental examination of Ms. Odeh for the purposes of a *Daubert* hearing is inappropriate, and unlikely to produce significant evidence as to whether the defense' proposed expert's qualifications, and methodology, or even her conclusions, satisfy the standards of *Daubert* and Rule 702. That is, there is only a base claim, and no showing that the diagnosis, as opposed to the competence and methods used by the practitioner who made the diagnosis, will be relevant to the *Daubert* issues concerning the admissibility of the expert testimony of Dr. Fabri, a highly regarded expert in the treatment of torture victims and the diagnosis of PTSD.

None of the cases cited in the Court's opinion concerns the necessity of a mental examination of a defendant in order for the Court to decide the admissibility of an expert's testimony. Nor does the Court, or the government,

8

explain how, in these circumstances, the mental examination of the defendant---who was not even aware that she suffered from PTSD until it was diagnosed by Dr. Fabri---can provide any credible "data" for the Court to base a determination of whether there is "an analytical gap between the data and the opinion offered," per *General Electric v. Joiner*, 522 U.S. 136, 146 (1997), cited by the Court; *Joiner* did not concern a mental exam[3] Here, the issue is the reliability, etc., of defendant's expert's opinion that, she suffers from PTSD and that affected her answers in her naturalization proceedings . At most, a difference of opinion between the government's expert and the defendant's expert is an issue for the Jury; thus we argued (unsuccessfully) that until a new trial is ordered, a mental exam is premature.

Thus, while the Court may believe there is no bar to a mental examination of the defendant for the purposes of challenging the reliability of her expert, such an inquiry does not justify an adversarial, *carte* blanche examination---without any preliminary showing of the necessity.

---

[3] Moreover, the Sixth Circuit cases cited in the Court's opinion, *Nelson v. Tennessee*, 243 F. 3d 244 (6th Circuit 2001) and Judge Keith's dissent in *Lee v. Smith & Wesson Gas Pipeline*, 760 F.3d 523, 529-530 (6th Cir. 2014) are civil cases which have nothing to do with mental examinations of criminal defendants, and Judge Keith's dissent in *Lee* concerns only the issue of the relevancy of the expert's testimony, which has already been determined by the Circuit Court in this case. The Court's Order fails to cite any case in which a mental exam of a criminal defendant has been authorized for the purposes of a *Daubert* hearing

9

**Conclusion**

It cannot be emphasized too strongly that, *this examination is bound to be highly traumatic and difficult for the defendant* Consequently, counsel entreat the Court to attend much more carefully to the threat to Ms. Odeh's mental and emotional well-being posed by the exam---and, the potential;, to impair her continuing ability to participate in her defense, and particularly to testify effectively in her own defense. In particular, we urge the Court's attention to the representations of Dr. Fabri in her attached affidavit about the exigencies and suffering the defendant experienced during Dr. Fabri's own examination.

Even after the intake process at the Kovler Institute, and a further extended beginning period of conversation, to build up the patient's relaxation and trust, Ms. Odeh was repeatedly brought to paralyzing grief, and the need for breaks. This is why Ms. Odeh also requests that she be permitted to have a caregiver or close friend present with her during the examination.

WHEREFORE, Rasmea Odeh respectfully requests that this Court direct the government to disclose the identity and *curriculum vitae* of the expert it has retained, together with the testing protocol the expert plans to employ, and a concrete explanation of the time that will be required. In addition, we ask for assurance that the exam will take place in a neutral setting, such as the DePaul

10

University Law School, and permission for the defendant to be accompanied by a trusted companion during the interrogation. If the Court has any question about the need for such protections, we ask that it set a hearing, where the issues can be more fully explored; and for such other and further relief as may be deemed just and appropriate in the premises of the case.

<div style="text-align: right;">Respectfully submitted,</div>

Dated: September 6, 2016

/s/ Michael E. Deutsch
Michael E Deutsch
1180 N. Milwaukee Ave.
Chicago, Ill. 60647

773-235-0070

Michael E. Deutsch
Dennis Cunningham
James R. Fennerty
William Goodman/Huwaida Aref
Attorneys for the Defendant

## CERTIFICATE OF SERVICE

I herby certify that on September 6, 2016, I electronically filed or caused to be filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF filers.

/s/ Michael E. Deutsch
People's Law Office
1180 N. Milwaukee Ave.
Chicago, Il 60642
773-235-0070

Dated: September 6, 2016