UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No.: 13-20772
        Honorable Gershwin A. Drain

RASMIEH YOUSEF ODEH,

        Defendant.
_____/

## OPINION AND ORDER DENYING GOVERNMENT'S MOTION FOR A DAUBERT HEARING, TO PRECLUDE THE TESTIMONY OF MARY FABRI, AND TO REENTER JUDGMENT OF CONVICTION [#216]

## I.  INTRODUCTION

On April 19, 2016, the United States Court of Appeals for the Sixth Circuit vacated Defendant Rasmieh Odeh's judgment of conviction for violating 18 U.S.C. § 1425(a), which criminalizes knowingly procuring naturalization contrary to law. The Sixth Circuit concluded that it was error for this Court to categorically exclude Defendant's Post Traumatic Stress Disorder ("PTSD") evidence. Defendant sought to introduce her diagnosis of PTSD through the testimony of clinical psychologist, Dr. Mary Fabri.

Presently before the Court is the Government's Motion for a *Daubert*

Hearing, to Preclude the Testimony of Mary Fabri, and to Reenter Judgment of Conviction, filed on November 17, 2016. Defendant filed a Response in Opposition to the Government's instant motion. In addition to Dr. Fabri's affidavit, Defendant also submitted the affidavits from two experts on the diagnosis of PTSD; Dr. James Jaranson, Psychiatrist and former Director of the Center for Torture Victims in Minneapolis and Dr. Hawthorne Smith, the Clinical Director of the Bellevue/NYU Program for the Survivors of Torture.

Upon review of the parties' submissions, the Court concludes that neither witness testimony nor oral argument will aid in the resolution of this matter. *See* E.D. Mich. L.R. 7.1(f) (2); *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000) ("The district court is not obligated to hold a *Daubert* hearing[.]"). For the reasons that follow, the Court will deny the Government's request to preclude Dr. Fabri's testimony and to reenter Defendant's judgment of conviction.

## II. FACTUAL BACKGROUND

In 1969, Defendant was convicted and sentenced to life imprisonment for her involvement in the bombing of a supermarket in Jerusalem, which led to the deaths of two college students, as well as her attempted bombing of the British Consulate in Jerusalem. Prior to her conviction, Defendant claims that she suffered brutal torture and rape at the hands of her Israeli captors and that she suffers from PTSD as a result. Defendant was released from prison after serving

ten years of her sentence through a prisoner exchange and later immigrated to the United States and became a naturalized citizen.

The indictment giving rise to this action stems from Defendant's answers to certain questions on her application for citizenship. Specifically, Defendant answered "No" to a series of questions asking if she had "EVER" been arrested, charged, convicted or imprisoned. Dkt. No. 3, Pg ID 15. Defendant claims that she understood this portion of the application to question whether she had ever been arrested, charged, convicted, or imprisoned during her time in the United States and that this interpretation is a result of her PTSD symptoms.

Prior to trial, Defendant gave notice of her intent to offer the testimony of Dr. Mary Fabri, a licensed clinical psychologist specializing in the treatment of torture survivors. Dr. Fabri was licensed in 1988 and has worked at the Marjorie Kovler ("Kovler") Center since its opening in 1987. The Kovler Center is a treatment center for survivors of torture. Dr. Fabri has also testified more than twenty times during immigration proceedings, including serving as an expert witness about PTSD and memory.

Dr. Fabri evaluated Defendant over several months for approximately eighteen hours. Dr. Fabri's evaluation included a diagnostic interview, the Clinician Administered PTSD Scale for DSM 5 (CAPS 5), which is a 30 question standardized interview and includes the Life Event Checklist (LEC-5) and the

PTSD Checklist (PCL-5). Dkt. No. 45, Pg ID 326. Dr. Fabri also utilized the Hopkins Symptom Checklist-25 (HSCL-25) measuring anxiety and depression. *Id.* Dr. Fabri concluded that her "diagnostic findings are consistent with a diagnosis of . . . PTSD." *Id.* at 18. Dr. Fabri further opined that "someone with PTSD would cognitively process questions about the past to avoid recalling traumatic experiences, such as torture, that are at the root of one's disorder." *Id.*

At a pretrial hearing, Dr. Fabri explained that symptoms of PTSD include "avoidance and sometimes even denial of thoughts, feelings, and activities associated with the trauma," which sufferers will develop as a way "to cope with the overwhelming memories of the trauma." Dkt. No. 113, Pg ID 1195. Dr. Fabri also explained how someone with PTSD could read the word "ever" on the naturalization application to mean only during her time in the United States:

> So she would look at this with her filters, her defenses, but I like the word filters better, working. That she would look at this and it was narrowed focus of time frame, she could potentially, I mean, I don't know what went on in her mind, right, but in my understanding of PTSD and survivors and how they develop strategies to cope in daily life that she would look at "ever in the U.S." It's a narrowed focus of time frame.

*Id.* at Pg ID 1198.

Dr. Fabri has also expounded on what she describes as the "filtering" process of a PTSD sufferer. Relying on research studies and literature, Dr. Fabri explains that "neuroanatomic structures and neurobiological systems are altered as

4

a result of trauma and contribute to the symptoms of PTSD." Dkt. No. 213-1, Pg ID 2879. Brain regions that control emotion, learning and memory insufficiently mediate between these processes which "affect[s] the retrieval or activation of memory." *Id.* Another peer working in the field of psychology and with survivors of torture, Dr. Hawthorne E. Smith, has illustrated the meaning behind Dr. Fabri's so-called "filtering" phenomenon as it relates to PTSD:

> It seems that 'filter' was used to help describe the disconnect that occurs between the brain's memory storage and retrieval functions. As the neuroscience points to an involuntary 'dislocation' or 'disconnection,' those words may have been more precise than the word 'filter.' [T]here is a strong body of evidence that demonstrates that sensory data and subjective experiences are initially processed through the amygdala, which serves as a sort of 'alarm center' in our brain. When the amygdala is excessively activated, or exists in a chronic state of alarm, it impacts our ability to efficiently organize and codify memories. For people suffering from chronic traumatic stress, the pre-frontal cortex (which is the brain's 'thinking center' and the area of most high-level executive functioning) becomes more disengaged from the retrieval and reflection processes of remembering. The traumatized person also lacks the capacity to intentionally focus on what is important to the given context. As such, memories may be misfiled, inaccessible, or overly intrusive.

Dkt. No. 213-2, Pg ID 2884.

Upon remand from the Sixth Circuit, this Court also ordered, at the request of the Government, the Defendant to submit to an examination by a Government expert, Ron Nieberding, a licensed clinical psychologist. After five separate days of examination and testing, including the CAPS-5 and the Life Events Checklist,

Dr. Neiberding opined that "[i]t is very likely that the defendant was experiencing symptoms consistent with many criteria associated with a diagnosis of PTSD at or near the time of the charged offense, although it is difficult to conclude that she met full criteria at the time." Dkt. No. 213-3, Pg ID 2897.

### III. SIXTH CIRCUIT OPINION

Defendant appealed her conviction and sentence on several grounds, including the claim that the Court had improperly excluded Dr. Fabri's testimony. This Court ruled that because 18 U.S.C. § 1425(a) is a general intent crime, Dr. Fabri's testimony was irrelevant to the *mens rea* element of § 1425(a) and was categorically inadmissible. The Sixth Circuit disagreed and held that "[r]egardless of whether 18 U.S.C. § 1425(a) is a specific or general intent crime, Dr. Fabri's proffered testimony is relevant to whether Odeh knew that her statements were false." *United States v. Odeh*, 815 F.3d 968, 976 (6th Cir. 2016).

Contrary to this Court's conclusion, the Sixth Circuit opined that "Dr. Fabri's testimony is potentially admissible because it is relevant to whether Odeh knew that her statements were false, which is an element of a § 1425(a) prosecution. Because the Government must prove every element of a crime beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 363-64 (1970), a defendant's right to present a defense 'generally includes the right to the admission of competent, reliable, exculpatory evidence' to negate an element of the offense,

*see United States Pohlot*, 827 F.2d 889, 900-01 (3d Cir. 1987) (citations omitted)." *Id*. at 977.

The Sixth Circuit explained that "[t]he right to present a complete defense is therefore subject only to 'reasonable restrictions' that 'are not arbitrary or disproportionate to the purposes they are designed to serve.'" *Id*. (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). Further, "Dr. Fabri's testimony is potentially exculpatory because it undermines an element of the crime." *Id*.; *see also id*. at 979 ("Dr. Fabri's testimony potentially negates the general intent element of §1425(a), Odeh's knowledge of the physical act of the offense.")

Because this Court excluded Dr. Fabri's testimony on a categorical exclusion that does not apply, the Sixth Circuit reversed Defendant's conviction directing this Court to render an "evidentiary decision regarding the admissibility of [Dr. Fabri's] testimony . . . ." *Id.* at 979. The Court will consider this issue in turn.

**IV. LAW & ANALYSIS**

A party offering an expert's opinion bears the burden of establishing the admissibility of such opinion by a preponderance of the evidence. *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 251 (6th Cir. 2001). Expert testimony is admissible only if it satisfies the requirements of Rule 702 of the Federal Rules

of Evidence, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court must determine whether the expert's testimony meets three requirements: (1) the expert witness must be qualified by "knowledge, skill, experience, training or education," (2) the proffered testimony is relevant and "will assist the trier of fact to understand the evidence or to determine a fact in issue," and (3) the testimony is reliable in that it is based on scientific, technical or other specialized knowledge. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008).

As to the third requirement, the *Daubert* court set forth the factors to be considered in determining whether to admit expert testimony as reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993). The factors include: (1) whether the expert's theory has been tested; (2) whether the expert's theory "has been subjected to peer review and publication;" (3) whether there is a "known

or potential rate of error" and "standards controlling" the particular technique and whether it has been generally accepted within the pertinent community. *Id.; see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

The factors are neither definitive, nor exhaustive, and may or may not be pertinent to the assessment in any particular case. *Kumho Tire*, 526 U.S. at 150. As such, the trial court has broad latitude to determine whether these factors are reasonable measures of reliability in a particular case. *Id.* at 153; *see also In re Scrap Metal*, 527 F.3d at 529 (noting that the test for reliability is "'flexible,' and the *Daubert* factors do not constitute a definitive checklist or test and may not be dispositive in every case.") "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *GE v. Joiner*, 522 U.S. 136, 146 (1997). However, "rejection of expert testimony is the exception, rather than the rule . . . ." *In re Scrap Metal*, 527 F.3d at 530.

The Government argues that Dr. Fabri's testimony should be excluded pursuant to Rule 702 because it is neither relevant nor reliable. The Government asserts that Dr. Fabri's testimony is not relevant because it does not address Defendant's condition at the time she answered the naturalization application, nor can she establish a causal connection between Defendant's PTSD and her answers.

9

The Government further complains that her theories have not been tested, subjected to peer review, or generally accepted in the scientific community. Lastly, the Government argues that even if relevant, Dr. Fabri's opinions are outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Therefore, her testimony should also be excluded pursuant to Federal Rule of Evidence 403.

### A.   Relevancy

The Government argues that Dr. Fabri's proposed testimony is not relevant because it is not tied to the facts of the case in two important respects. First, Dr. Fabri's evaluation and diagnosis was not focused on the relevant time period. Dr. Fabri's diagnosis centered on the Defendant's current mental condition, rather than its state in 2004 when Defendant prepared her naturalization application. Second, Dr. Fabri's opinions do not establish that PTSD caused the Defendant to falsify her answers on the naturalization application. Dr. Fabri has opined that PTSD "could" have impacted the Defendant's intent.

Contrary to the Government's argument, Dr. Fabri's testimony will assist the jury in determining whether Defendant's PTSD affected her memory when she filled out the naturalization application and whether she knowingly lied when she answered "No" to questions asking if she had "EVER" been arrested, charged, convicted or imprisoned. This aspect of the Government's argument is somewhat

puzzling considering the Sixth Circuit's repeated statements that Dr. Fabri's testimony is relevant in this case. *Odeh*, 815 F.3d at 977(concluding that "Dr. Fabri's proffered testimony is relevant to whether Odeh knew that her statements were false."); *see also id*. at 979 ("Dr. Fabri's testimony potentially negates the general intent element of §1425(a), Odeh's knowledge of the physical act of the offense."); *id*. at 977 ("Dr. Fabri's testimony is potentially exculpatory because it undermines an element of the crime.").

Moreover, the Government glosses over Dr. Fabri's pretrial testimony wherein she explained that when someone with PTSD is not experiencing an acute arousal of PTSD, then the individual is able to narrow his or her focus to keep traumatic memories at bay. Dkt. No. 113, Pg ID 1197. Dr. Fabri indicated that at the time of the charged offense, Defendant was experiencing a "period of relative calm" because "she was employed and working and feeling successful in her life here in the U.S." *Id.* Thus, she opined that it was likely the Defendant looked at the questions concerning arrests, imprisonment and convictions with her "filters" and interpreted the criminal history questions to keep her traumatic memories at a distance. *Id*., Pg ID 1197-98.

Contrary to the Government's assertion, Dr. Fabri's proposed testimony is relevant to whether Defendant "knowingly" provided a false statement on her naturalization application.

11

### B. Qualification

The Government also insists that Dr. Fabri is not qualified to provide an expert opinion on Defendant's state of mind because she is a clinical psychologist and not a forensic psychologist. A clinical psychologist treats patients for current symptoms whereas a forensic psychologist does not treat patients, but instead attempts to determine a person's mental condition often in the context of litigation or criminal justice proceedings. This argument is a red herring, particularly in light of the fact that the Government's expert conducted a forensic examination of Defendant and concluded that Defendant suffers from PTSD. The fact that Dr. Neiberding's conclusion supports Dr. Fabri's PTSD diagnosis demonstrates that the difference between a clinical and forensic examiner has no bearing on the validity of Dr. Fabri's findings.

Moreover, Dr. Fabri has over twenty-five years of experience specializing in the treatment of torture survivors. Dr. Fabri has also testified more than twenty times during immigration proceedings, including serving as an expert witness about PTSD and memory. Dr. Fabri's education and experience, coupled with her knowledge of the scientific literature on PTSD and memory, render her qualified to opine on Defendant's state of mind.

### C. Scientifically Reliable

As to reliability, the Government mainly takes issue with Dr. Fabri's theory

that PTSD can cause sufferers to subconsciously filter certain questions put to them in order to avoid traumatic memories from the past. The Government asserts that Dr. Fabri fails to identify any academic study that has tested this theory. Nor has Dr. Fabri's theory been subjected to peer review and publication. She has not provided any study or publication linking PTSD to the phenomenon of filtering written questions, nor that filtering can occur subconsciously. Lastly, there is no evidence that Dr. Fabri's theory has been accepted by the scientific community.

Contrary to the Government's assertion, Dr. Fabri's theory has been "widely accepted among neuroscientists and mental health clinicians." Dkt. No. 212-1, Pg ID 2850. The Government's complaints are aimed at Dr. Fabri's attempt to simply describe the complex brain process of encoding traumatic memories when suffering from PTSD. Dr. Fabri's labeling of this process as "filtering" does not render her theory unreliable. *See* Dkt. No. 213-2, Pg ID 2884 ("It seems that 'filter' was used to help describe the disconnect that occurs between the brain's memory storage and retrieval functions. As the neuroscience points to an involuntary 'dislocation' or 'disconnection,' those words may have been more precise than the word 'filter.'")

Dr. Fabri's affidavit, as well as the affidavits of Dr. Hawthorne E. Smith and Dr. James Jaranson demonstrates that there is not only general acceptance in the scientific community, but also ample literature on PTSD and its effect on memory

13

retrieval. Dkt. No. 213-1, Pg ID 2880; Dkt. No. 212-1, Pg ID 2850-52; 2854-55. The Government's reliance on *Downs v. Perstorp Components, Inc.,* 26 F. App'x 472 (6th Cir. Jan.4, 2002) is misplaced because the expert in *Downs* was not able to offer testimony that was accepted by the medical community. *Id.* at 475. Nor could the expert identify any scientific literature to support his theory. *Id.*

The Government's remaining arguments concerning the reliability of Dr. Fabri's proposed testimony are arguments that go to the weight of her testimony, rather than its admissibility. For instance, the Government complains that Dr. Fabri's opinion is unreliable because it rests solely upon the information self-reported by Defendant. However, Dr. Fabri used the same Clinician Administered PTSD Scale for DSM 5 (CAPS 5), considered "a gold standard in PTSD diagnosis" and Life Events Checklist that the Government's expert used to diagnosis Defendant with PTSD. Both experts determined that Defendant most likely suffered from PTSD at the time of the charged offense. *See* Dkt. No. 213-3, Pg ID 2897; Dkt. No. 113, Pg ID 1197-98.

The Government will be allowed to cross examine Dr. Fabri as to her evaluation of the Defendant and whether she reviewed sufficient corroborating information. *See Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020-21 (7th Cir. 2000) ("[I]n clinical medicine, the methodology of physical examination and self-reported medical history . . . is generally appropriate . . . . [T]he accuracy and

truthfulness of the underlying medical history is subject to meaningful exploration on cross-examination and ultimately to jury evaluation."). In sum, the Court concludes that Dr. Fabri's proposed testimony is sufficiently reliable under *Daubert*.

### D. Rule 403

Finally, the Government argues that even if Dr. Fabri's testimony is relevant, it should nonetheless be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Journey-Acquisition-II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 458 (6th Cir. 2016).

The Government asserts that a new trial which admits PTSD evidence will likely devolve into a dispute regarding collateral issues, such as the nature of Defendant's interrogation; whether she had been a member of the Popular Front for the Liberation of Palestine; and whether she had in fact confessed voluntarily in Israel. Additionally, competing evidence from psychologists may create a sideshow of the actual issues before the jury-namely whether Defendant knowingly falsely answered the questions on the application for citizenship. Such testimony will likely confuse the jury and consume a large amount of time.

The Court disagrees that Dr. Fabri's testimony will likely confuse the jury or

that it would unnecessarily lengthen the presentation of the evidence. Any potential prejudice to the Government does not outweigh the probative value of Defendant's potentially exculpatory PTSD evidence.

## V. CONCLUSION

For the reasons articulated above, the Government's Motion to Preclude the Testimony of Mary Fabri, and to Reenter Judgment of Conviction [#216] is DENIED.

SO ORDERED.

Dated: December 6, 2016 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 6, 2016, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk