UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,　　　　CRIMINAL NO. 2:13-cr-20772

　　　　　　　Plaintiff,　　　　　HONORABLE GERSHWIN A. DRAIN

vs.

D-1 RASMIEH YOUSEF ODEH,

　　　　　　　Defendant.
_____/

MOTION OF THE UNITED STATES TO EMPANEL AN ANONYMOUS
JURY, TO PARTIALLY SEQUESTER THE JURY, AND TO TAKE
OTHER MEASURES NECESSARY TO ENSURE AN
UNTAINTED JURY

The United States, for its Motion to Empanel an Anonymous Jury, to Partially

Sequester the Jury, and to Take Other Measures Necessary to Ensure an Untainted

Jury, states the following:

1.  Defendant has been charged in a superseding indictment with Unlawful

Procurement of Naturalization, in violation of 18 U.S.C. § 1425(a).

2.  Since the date of defendant's arrest for naturalization fraud, her

supporters and the "Rasmea Defense Committee" have orchestrated a

concerted effort to influence these proceedings. The result has been a large

group outside the Courthouse protesting and parading at each proceeding,

carrying signs demanding dismissal of charges and "Justice for Rasmea," and

displaying the Palestinian flag.  See Appendix to Brief in Support of Motion.

Those efforts continue to the present, up to an including the most recently

scheduled       proceedings       before       this       Court.       See

www.http://justice4rasmea.org/news/2016/11/04/all-out-november-29-in-

detroit/.   (The fact that the most recent hearing, previously set for November

29, 2016, was canceled by the Court is not relevant; it is clear that a large

contingent would have attended court had proceedings occurred, and will do

so in the future.)

3.  Hatem Abudayyeh, who is listed on press releases as "Rasmea Defense

Committee spokesperson," and thus speaks on behalf of Defendant Odeh, has

publicly stated that a goal of filling the courtroom, rallying outside the

courthouse, and chanting while holding posters is to influence the opinions of

jurors.  Influencing the opinions of jurors and potential jurors through extra-

judicial means is obviously improper and, as discussed in the accompanying

brief, almost certainly criminal.

4.  As a result of those efforts, for Defendant's previous trial, the Court

ordered partial sequestration of the jury, whereby the United States Marshal

Service picked up the jurors at an off-site location, and transported them to

the Courthouse so that they were not exposed to the demonstrations and signs.

2

See Docket Entry 107 at 9, Page ID 1079 ("[T]his Court finds that partial sequestration is warranted to ensure the jurors are not exposed to any improper influences by Defendant's supporters while they are assembled in front of the courthouse[.]")

5. Given the continued planned demonstrations, which include efforts to sway the jury, the Court should employ the same procedure as before and partially sequester the jurors, to protect the jury from improper influence.

6. In addition, the United States requests an anonymous jury, which as also set forth in the attached brief, is necessary to protect the jurors and ensure the integrity of the proceedings.

7. Pursuant to Local Rule 7.1(a)(2)(A), on February 13, 2017, the undersigned sought concurrence of Michael Deutsch, counsel for the defendant, who refused to concur in the relief sought, necessitating the filing of the instant motion and brief.

3

WHEREFORE, the government prays that the Court grant its motion and order the use of an anonymous jury, and that the Court order the United States Marshal Service to provide for partial sequestration of the jury.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney

s/Jonathan Tukel
JONATHAN TUKEL (P41642)
States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
 (313) 226-9749
jonathan.tukel@usdoj.gov

s/Michael C. Martin
MICHAEL C. MARTIN United
Assistant U.S. Attorney
211 W. Fort, Suite 2001
Detroit, MI 48226
(313) 226-9670
Michael.C.Martin@usdoj.gov

Dated: February 14, 2017

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,           CRIMINAL NO. 2:13-cr-20772

                Plaintiff,           HONORABLE GERSHWIN A. DRAIN

vs.

D-1 RASMIEH YOUSEF ODEH,

                Defendant.
_____/

## BRIEF OF THE UNITED STATES IN SUPPORT OF MOTION TO EMPANEL AN ANONYMOUS JURY, TO PARTIALLY SEQUESTER THE JURY, AND TO TAKE OTHER MEASURES NECESSARY TO ENSURE AN UNTAINTED JURY

### INTRODUCTION

Defendant is charged with having procured her United States citizenship unlawfully, in violation of 18 U.S.C. § 1425(a), which makes it a crime to "knowingly procure[] or attempt[] to procure, contrary to law, [his or her] naturalization…." Defendant also has an extensive network of supporters, including a "Rasmea Defense Committee."

Since Defendant's indictment, Hatem Abudayyeh, acting as Defendant's agent by virtue of his role as "spokesperson for the Rasmea Defense Committee" has engaged in a concerted effort to improperly influence the criminal proceedings

5

before the Court.  Specifically, through the aid of the AAAN (www.aaan.org), as well as the Committee to Stop FBI Repression (CSFR) (www.stopfbi.net) and the U.S. Palestine Community Network (USPCN) (www.USPCN.org), Hatem Abudayyeh has organized a campaign designed to improperly sway the jury that will be empaneled to hear this case.  Hatem Aybudayyeh also has publicly claimed that through those same efforts, "we," referring to the Defense Committee, "pressured the judge" into favorable rulings.  *See infra*.

ACTIVITIES WHICH COULD AFFECT THE INTEGRITY
OF THESE PROCEEDINGS

On September 10, 2014, the media outlet "N Don't Stop" broadcast from the AAAN headquarters in Chicago, Illinois, an interview with Hatem Abudayyeh in which he specifically recruited individuals to demonstrate outside the courthouse for the purpose of swaying the jury in defendant's favor:

> We need to fill that courtroom everyday…. Filling that courtroom every day and rallying outside that courtroom every day with our posters and our banners and our chants about, you know, justice for Rasmea, those are, those are really, really important things that happen in the courtroom because they, they sway, they could potentially, you know, umm, sway the opinions of the jurors, this woman is not isolated, this woman is not a criminal, this woman has massive, you know, massive community support, right.  An acquittal on this case is more than just a case of this individual activist. . . .  This is really, truly a case about Palestine as well. . . .  You know, we believe that like you know putting that putting her on trial is

6

> putting Palestine on trial. Winning this thing on our end
> is another victory for the Palestinian people.

*See* http://www.youtube.com/watch?v=nU-e3w1TMQI, at time 2:24 – 3:38.

Abudayyeh also purports to speak on behalf of the other groups. *See id*. at time 1:42-

2:08 (discussing activities including protests and picketing "we" do and referring

people to StopFBI.net and USPCN.org for further information). Each of the

websites to which Abudayyeh referred interested persons in fact contains details

regarding planned protests regarding this case. Therefore, it seems clear that all of

the activity is concerted and all of it centers on these proceedings.

   In fact, those groups have demonstrated in front of the Theodore Levin United

States Courthouse in connection with all previous proceedings in the case, including

the most recent. See www.http://justice4rasmea.org/news/2016/11/04/

all-out-november-29-in-detroit/. (The fact that the hearing previously scheduled for

November 29, 2016, was canceled by the Court is not relevant; it is clear that a large

contingent would have attended court had proceedings occurred, and will do so in

the future.); *see also* https://www.youtube.com/watch?v=W66FD8OcPpk (July 31,

2014, status conference); http://www.youtube.com/watch?feature=

youtube&v=NVEA0fyOGUM&app=desktop   (September   2,   2014,   status

conference). Attached in an Appendix are two photographs taken outside the

courthouse   during   earlier   proceedings   in   the   case,   available   on

7

"Justice4Rasema.org," showing the sidewalks around the courthouse entrances filled with demonstrators holding signs with Defendant's photograph, and stating things such as "Justice for Rasmea" and "Drop the Charges." And because the demonstrators manifested their intention to be present for the first trial there is every reason to expect they will do the same again now. *See https://m. youtube.com/watch?v=phbaCLkAHr0* at time 01:14 - 01:26 ("We will be back here of course for the trial and we'll fill that courtroom … and everybody here bring 5 people because … if people can't get in that's great, that's great.")

## ARGUMENT

**BASED ON THE PREVIOUS AND PLANNED DEMONSTRATIONS, PARTIAL SEQUESTRATION OF THE JURY AND AN ANONYMOUS JURY ARE NECESSARY TO ENSURE THE INEGRITY OF THE PROCEEDINGS**

In light of such past efforts, the Court, during the first trial, ordered partial sequestration of the jury, so that the jury would not be exposed to such improper external influences on it. *See* Docket Entry 107 at Page ID 1079. Given the continued planned demonstrations, it will be necessary to employ the same procedures at the forthcoming trial. It is simply not permissible under any theory to expose jurors to a large mob of demonstrators carrying signs and bullhorns, demanding particular actions by the jurors, and who the jurors must walk past in

8

order to gain access to the Courthouse.  The Court recognized as much in the first trial by ordering partial sequestration, and nothing has changed since then.

It also is worth noting that such activity is almost certainly criminal, and without a doubt is not First Amendment protected.  Title 18 U.S.C. § 1507 provides: "Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the United States, or in or near a building or residence occupied or used by such judge, juror, witness, or court officer, in the discharge of his duty, pickets or parades in or near a building housing a court of the United States, or in or near a building or residence occupied or used by such judge, juror, witness or court officer, or with such intent uses any sound-truck or similar device or resorts to any other demonstration in or near any such building or residence, [is guilty of a crime against the United States]."

An identical statute was upheld against Constitutional challenge in *Cox v. State of Louisiana*, 379 U.S 559, 562 (1965) (finding the "constitutional safeguards relating to the integrity of the criminal process" necessarily "exclude influence or domination by either a hostile or friendly mob.  There is no room at any stage of judicial proceedings for such intervention; mob law is the very antithesis of due

9

process." *Id*.)  In addition, § 1507 is directed not only to instances involving an actual influence on a jury, but also to an erroneous public perception that any other court personnel may be subject to being influenced by such efforts.  "A State may also properly protect the judicial process from being misjudged in the minds of the public.  Suppose demonstrators paraded and picketed for weeks with signs asking that indictments be dismissed, and that a judge, completely uninfluenced by these demonstrations, dismissed the indictments.   A State may protect against the possibility of a conclusion by the public under these circumstances that the judge's action was in part a product of intimidation and did not flow only from the fair and orderly working of the judicial process."  *Cox*, 379 U.S at 565.  And in fact, it is clear that Defendant's supporters and Defense Committee believe that they "pressured" this Court into making rulings they desired.   See http://bbsradio.com/podcast/people-speak-march-8-2016 at 34:00-34:10 ("We put a lot of pressure on the first judge who had to recuse himself . . ."); *id. at* 34:20-34:51 ("We put pressure on Judge Drain after the conviction when he had ordered her to prison even though he knew that we were filing for an appeal.  Um, she spent a month in prison, three weeks of them in solitary confinement.  And uh, really it was us organizing all these letters of support from around the country, um, uh letters to the judge directly, um, that made him, uh, that forced him to release her.")  The Court

10

is fully justified in taking steps to prevent such public perceptions regarding the jury.

In any event, even absent Abudayyeh's well-publicized public statements as to his intent, the Supreme Court has held that "At the very least, a group of demonstrators parading and picketing before a courthouse where a criminal charge is pending, in protest against the arrest of those charged, may be presumed to intend to influence judges, jurors, witnesses, or court officials." *Id*. The fact that the protests and pickets have been timed to occur only on the dates of actual proceedings in this case simply reinforces the publicly-stated intent to influence those proceedings. *See United States v. Carter*, 717 F.2d 1216, 1220 (8th Cir. 1983) ("[T]he fact that the demonstration took place at the very time and place of the [] trial is grounds for an inference that the defendant intended to influence its outcome.").

As regards an anonymous jury, the Sixth Amendment provides defendants with a right to a public trial by an impartial jury, but it does not guarantee a right to a public jury. *United States v. Lawson*, 535 F.3d 434, 440 (6th Cir. 2008). A district court may empanel an anonymous jury "in any case where the interests of justice so require." Title 28, United States Code, § 1863(b)(7). The decision to grant an anonymous jury is within the sound discretion of the trial court. *Lawson* at 439; *United States v. Talley*, 164 F.3d 989, 1001 (6th Cir. 1999).

11

Prior to the first trial, the Court denied a similar motion regarding an anonymous jury, while granting a motion for partial sequestration.  See Docket Entry 107.  The Court particularly relied on the fact that on occasion the Sixth Circuit has commented that an anonymous jury is warranted "where the defendants" have a particular history, such as jury tampering.  See Docket Entry 107 at 4, page ID 1074 (*citing United States v. Talley*, 164 F.3d 989, 1001-1002 (6th Cir. 1999)).  However, the examples given by the Sixth Circuit are merely illustrative and not limiting, as it has held that jury anonymity should be used in cases *"including, but not necessarily limited to"* the examples given.  See Docket Entry 107 at 3, Page ID 1073, *citing Lawson*, 535 F.3d at 439 (emphasis added).  This is because the statute providing for an anonymous jury permits it *whenever* required "in the interests of justice."  28 U.S.C. § 1863(b)(7).

In addition, the cases cited in the Court's previous order denying an anonymous jury differ from the present case in significant ways.  In none of those cases was there a "defense committee" dedicated to demonstrating outside the courthouse with signs and banners demanding "justice" for the defendant and dismissal of the charges, while publicly announcing that the charges were politically motivated.  The importance of the existence of a "defense committee" conducting public demonstrations significantly distinguishes this case from the other cited cases,

12

including *Kilpatrick* and *Koubriti*. That important difference is only magnified by the fact that the spokesperson for Defendant Odeh's committee has publicly stated his belief that the committee's activities could influence a jury, and has stated his further belief (not shared by the government, but indicative nonetheless) that those actions "pressured" the Court into rulings the Defense Committee deemed favorable. While a judge would not be intimidated by such efforts, it is surely reasonable to conclude that the likely result of these actions is in fact "an emotional, political atmosphere that create[s] a risk of jury intimidation and improper influence." See Docket Entry 107 at 3, Page ID 1073, *citing United States v. Dakota*, 197 F.3d 821, 827 (6th Cir. 1999). Those effects further magnified by the fact that under the superseding indictment and also by virtue of the recent case of *United States v. Maslenjak*, 821 F.3d 675, 687 (6th Cir. 2016), *cert. granted on other grounds*, No. 16-309 (Jan. 13, 2017), the jury will be called upon to determine, as factual questions with instructions by the Court, whether Defendant Odeh falsely answered the question asking whether she was "***EVER*** associated, directly or indirectly, with a terrorist organization," and whether she had "engaged in terrorist activity." See Superseding Indictment, General Allegations ¶ 22; Count One, ¶¶ 2(B), 2(D); *Maslenjak*, 821 F.3d at 687 (holding that "contrary to law" in § 1425(a) means "contrary to all laws applicable to naturalization," including all requirements of the

INA, and instructing jury on those requirements), *cert. granted on other grounds*, No. 16-309 (Jan. 13, 2017).  The government will provide a much fuller explanation of the implications of *Maslenjak* in its brief in opposition to defendant's motion to dismiss the superseding indictment, which will be filed later this month.

In the present case, it is abundantly clear that Defendant Odeh is aware of and endorses the efforts of her "defense committee."  To begin with, it is absurd to think that such a structure could exist without her knowledge and encouragement.  And beyond the common sense approach, Defendant has addressed and thanked the crowd of supporters after at least some of the demonstrations, including the verdict after the first trial.  *See, e.g.*, https://www.youtube.com/watch?v=ieFeaz VZ78Q; https://www.youtube.com/watch?v=d0vcz_7tcVQ at 1:30-2-02.  Thus, even if the law required some direct involvement by Defendant Odeh in efforts to affect jurors in order to justify an anonymous jury, which it does not, that requirement would be fully satisfied here.

Further, defendant and her supporters have previously attempted to flood Department of Justice telephone lines in an attempt to influence these proceedings. *See* http://www.stopfbi.net/2014/9/4/all-out-detroit-defend-rasmea-odeh; https://m. youtube.com/watch?v=phbaCLkAHr0, at time .00:17 - 00:44.  There is no reason to think they will not do so with regards to jurors if the jurors' names are made public;

14

at a minimum, given the publicly stated goal of swaying the jury by other means, it is the prudent course to make any such attempt impossible.

Moreover, the Court can take reasonable precautions to minimize any potential prejudicial effects to defendant from the use of an anonymous jury, to ensure that her trial rights are protected. As the Court previously noted, when an anonymous jury is used, the Court "must ensure that the defendant retains his or her right to an unbiased jury by conducting a voir dire designed to uncover bias as to issues in the case and as to the defendant h[er]self . . . ." Docket Entry 107 at 3, Page ID 1073, citing *United States v. Talley*. That the Court would do so goes without saying. In the previous trial, during voir dire, the Court carefully inquired as to potential bias based on Defendant's Muslim religion and the nature of the charges. That practice would be unchanged if an anonymous jury were empaneled. Defendant's ability to challenge potential jurors for bias or prejudice during the voir dire process would remain unabridged because only their names would remain confidential.

The Court also previously noted that in the event of an anonymous jury, it would have to provide the jury with a neutral and non-prejudicial reason for the practice. Docket Entry 107 at 4, Page ID 1074. The Court did so in the first trial to explain the partial sequestration, and that same explanation would be sufficient for

purposes of an anonymous jury.

CONCLUSION

For the reasons stated, the Court should order the United States Marshal Service to implement a partial sequestration providing jurors transportation to and from the Courthouse from an offsite location, and should empanel an anonymous jury.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney

s/Jonathan Tukel
JONATHAN TUKEL (P41642)
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9749
jonathan.tukel@usdoj.gov

s/Michael C. Martin
MICHAEL C. MARTIN
Assistant United States Attorney
211 W. Fort, Suite 2001
Detroit, MI 48226
(313) 226-9670
michael.c.martin@usdoj.gov

Dated: February 14, 2017

16

APPENDIX





## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the attorney(s) of record.

s/Jonathan Tukel
JONATHAN TUKEL (P41642)
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9749
jonathan.tukel@usdoj.gov

19